In the Matter of **PENN CENTRAL TRANSPORTATION COMPANY,** Debtor.

In re Purchase of maintenance of way equipment through **MANOR REAL ESTATE CO.**

No. 70–347.

United States District Court, E. D. Pennsylvania.

May 12, 1972.

Blank, Rome, Klaus & Comisky by Robert P. Lipkin, Philadelphia, Pa., for trustees, Penn Central.

Jack B. Justice, Philadelphia, Pa., for Girard Trust Bank.

Fox, Rothschild, O'Brien & Frankel by Nochem S. Winnet, Philadelphia, Pa., for First Natl. City Bank of New York.

Dechert, Price & Rhoads by Matthew J. Broderick, Philadelphia, Pa., for Penn Central Co.

Ballard, Spahr, Andrews & Ingersoll by Morris Cheston, Jr., and Richardson Blair, Philadelphia, Pa., for Girard Trust Bank and Morgan Guaranty Trust Co. of New York, as indenture trustees.

Tate & Ervin by W. Bourne Ruthrauff and Spencer Ervin, Jr., Philadelphia, Pa., for Richard Joyce Smith, trustee, New York, New Haven & Hartford RR.

Blank, Rome, Klaus & Comisky by Matthew Bullock, Philadelphia, Pa., Special counsel to Trustees, Penn Central Trans. Co.

Aaron Fine, Philadelphia, Pa., for Consolidated Edison Co.

Schnader, Harrison, Segal & Lewis by Edward Mullinix, Philadelphia, Pa., for Federal Sign & Signal Corp.

OPINION AND ORDER NO. 708

FULLAM, District Judge.

In the ordinary course of its railroad business, the Debtor expends large sums annually in the purchase of various kinds of roadway maintenance

equipment, such as tampers, ballast equalizers, handlers, spike pullers, wire inspection cars, etc. (hereinafter referred to as "maintenance equipment"). In anticipation of its maintenance needs for the year 1970, the Debtor, before bankruptcy, undertook to acquire maintenance equipment totalling approximately $1,985,000 in cost.

The Debtor desired to finance these purchases, but for various reasons, including, apparently, certain potential obstacles represented by "after-acquired property" clauses in its various railroad mortgages, the Debtor arranged to channel these purchases, and the related financing, through its wholly-owned subsidiary, Manor Real Estate Company ("Manor").

The mechanics of these arrangements were somewhat complicated. Manor placed orders for the equipment, in its own name. It was contemplated that the Debtor would advance to Manor the cash necessary to complete the purchases; thereafter, upon acquisition of the equipment, Manor would sell the equipment to the Debtor under conditional sales contracts, and would then assign its rights under the conditional sales contracts to a lender. The money received by Manor from the lender as consideration for the assignments would then be returned to the Debtor in repayment of the cash advances.

All of this maintenance equipment has been delivered to the Debtor and placed in service. However, for obvious reasons, the proposed financing arrangements have not been feasible. The Trustees have filed a petition (Document No. 1331) seeking authorization, in effect, to complete all of these purchases by payment in cash. This petition is opposed, in part, by Girard Trust Bank and Morgan Guaranty Trust Company, indenture trustees under certain railroad mortgages.

Any attempt to sort out and dispose of the various legal issues involved must begin with a statement of the factual situation as it existed when the Debtor went into bankruptcy on June 21, 1970. As of that date, the Debtor had advanced $404,700 to Manor; Manor had ordered all of the equipment and had obligated itself to pay for it; some of the equipment had been delivered to the Debtor (the balance was delivered shortly after bankruptcy); and none of the permanent financing had been carried out. After bankruptcy, the Debtor made further payments for some of this equipment, including some equipment which had been delivered before bankruptcy, and some which was delivered after bankruptcy; these payments were made without obtaining Court approval.

After the initial hearing in this matter, I concluded that it would unquestionably be proper to authorize payment by the Trustees for all equipment delivered after bankruptcy, on the theory that, irrespective of the prior arrangements, the Trustees should be authorized to procure and pay for this equipment, which was essential to the continued operation of the railroad. Accordingly, Order No. 431 authorized expenditures (including ratification of previous expenditures) totalling $418,806, representing the full price of all equipment delivered post-bankruptcy. The issues relating to equipment which was delivered to the Debtor before bankruptcy must now be determined.

With respect to the equipment delivered before bankruptcy, the position of the indenture trustees may be summarized as follows: this equipment was in the possession and control of the Debtor on the date of bankruptcy; therefore, under provisions of Order No. 1, neither Manor nor the original suppliers, nor anyone else, can repossess the equipment or interfere with Debtor's possession thereof. The Debtor has a claim against Manor for the sums advanced. Manor is entitled to file a proof of claim for any damages it may sustain, or may already have sustained, either by reason of the Debtor's failure to advance additional sums as agreed, the Debtor's failure to complete the conditional sales fi-

nancing, or the Debtor's use of equipment, to which Manor holds title. Payments which were made without Court authorization should be restored. And any attempt by the Trustees to pay for the equipment would be improper since it would amount to preferential treatment of Manor.

The Trustees of the Debtor, on the other hand, argue that matters of form should not be permitted to obscure the substance of the transaction. In reality, they point out, Manor was acting as merely a financial conduit for the Debtor throughout the entire transaction. Manor was a wholly-owned subsidiary of the Debtor, and provided its services gratuitously, with no prospect of any benefit to itself. To adopt the indenture trustees' position would be to require the Trustees of the Debtor to manipulate a controlled subsidiary in such a way as to perpetrate a fraud upon the creditors of Manor.

To recapitulate, the present situation is as follows:

1. Prior to bankruptcy, the Debtor advanced $440,707 to Manor, and Manor paid this money over to suppliers of the maintenance equipment. The Trustees request that the "advance" be cancelled, and that title to the equipment thus purchased be transferred to the Trustees.

2. After bankruptcy, as a result of procedural confusion precipitated by the bankruptcy, the Debtor's estate has made payments totalling $650,000 on account of the purchase of equipment which was delivered before bankruptcy. The Trustees seek ratification of these expenditures, and vesting of title to this equipment in the Trustees.

3. In addition, equipment costing $570,150 was delivered before bankruptcy and has not yet been paid for. The Trustees seek authorization to pay for this equipment, and receive title thereto.

I am satisfied that, as between Manor and the Debtor, there was never any obligation on the part of Manor to pay for any of the equipment, except with funds supplied by the Debtor; and Manor was never obligated to repay the sums "advanced" except in the form of equipment purchased therewith. As between Manor and the Debtor, there never was a true debtor-creditor relationship, but merely an agency for the purchase of equipment. It would be manifestly inequitable to permit the Debtor to retain the equipment, without reimbursing Manor, or to seek to recover the $440,707 previously advanced. Nor was it ever contemplated that the Debtor should have the use of the equipment without paying for it. Legal title to the equipment remains in Manor. Accordingly, I believe there is merit in the Trustees' argument that there would be a substantial likelihood that, if Manor were to file a reclamation petition, such petition might well have to be granted, notwithstanding the provisions of Order No. 1 herein. Unquestionably, the equipment is needed by the Debtor's estate. I have concluded that, if for no other reason than to obviate the possibility of successful reclamation, the Trustees' petition should be granted, and the requested payments authorized and/or ratified.

■ I believe that additional considerations require the same result. As our Supreme Court has stated, in Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), the equitable powers of a bankruptcy court should be applied "to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done." It would be most inequitable to direct Court-appointed Trustees to permit depletion of the assets of a wholly-owned subsidiary for the benefit of the Debtor's estate, to the prejudice of the creditors of the subsidiary. This is so, even though Manor might well eventually be made whole as a result of the ultimate reorganization of the Debtor.

It should perhaps be noted that, even if Manor were regarded as merely a creditor of the Debtor in this transaction, the payments for which authoriza-

tion is now sought would not necessarily be unduly preferential. There is every reason to suppose that Manor's claim, if treated as that of a creditor, would be a priority claim, and would, in all likelihood, be satisfied in full in the reorganization plan.

And finally, it bears mention that, since the Debtor's estate does own all of the stock of Manor, depletion of Manor's assets, which might well jeopardize Manor's viability, would scarcely be consistent with the best interests of the Debtor's estate.

I recognize the possibility that, in order to do full justice to all parties, it might be desirable to provide that legal title to all of the maintenance equipment which was delivered to the Debtor prior to bankruptcy should be deemed to have vested in the Debtor immediately prior to the filing of the reorganization petition. However, since the implications of this suggestion have not been briefed or argued, the order to be entered will leave that matter open for further consideration at the appropriate time.

## ORDER NO. 708

And now, this 12th day of May, 1972, upon consideration of the Trustees' "Petition for Authority to Make Payment with Respect to Certain Maintenance of Way Equipment and for Other Relief" (Document No. 1331) and after hearing held and duly noticed, it is ordered that:

1. The Trustees are authorized to cancel the advances to Manor Real Estate Company in the amount of $440,707 and to accept title to the equipment referred to in paragraph 4A of the Petition for this Order.

2. The Trustees' disbursements for equipment referred to in the Petition for this Order, delivered prior to June 21, 1970, in the amount of $650,050, are hereby ratified and approved.

3. The Trustees are authorized to make payment for equipment referred to in the Petition for this Order, delivered to the Debtor prior to June 21, 1970, in the amount of $570,150.

4. This Order shall be without prejudice to the right of any party in interest to apply for a further order of this Court directing that title to all of said equipment shall be deemed to have vested in the Debtor immediately prior to June 21, 1970, or for other appropriate relief.