**W. D. RUBRIGHT COMPANY, a corporation, Plaintiff,**

v.

**INTERNATIONAL HARVESTER COMPANY, a corporation, Defendant.**

**Civ. A. No. 68–482.**

United States District Court,
W. D. Pennsylvania.

May 2, 1973.

On Motion for Judgment N.O.V.

May 10, 1973.

Rosenberg & Kirshner, Pittsburgh, Pa., for plaintiff.

Dickie, McCamey & Chilcote, Pittsburgh, Pa., for defendant.

## OPINION

SCALERA, District Judge.

### HISTORY

Plaintiff, W. D. Rubright Company, owned and operated a 1960 International six-wheel truck, model No. CoFl92–AFA 6742 H.

On August 7, 1967, this International truck was being operated by an agent of

Rubright when it was involved in an accident which inflicted considerable injuries upon one Jack Cowan.

Cowan brought suit against Rubright in the Court of Common Pleas of Lawrence County, Pennsylvania, at No. 8 December Term 1967.

Rubright joined International Harvester Company as an additional defendant in the Cowan suit.

On March 4, 1968, the claim of Cowan was settled for the sum of $180,000. Rubright paid the entire amount of the settlement which also released International from further liability.

When International refused to contribute to Rubright one-half of the settlement, or the sum of $90,000, Rubright brought the present suit.

Immediately prior to trial, International stipulated that the $180,000 paid to Cowan was a reasonable fee in compensation for his injuries and other losses.

The jury empaneled in this matter returned answers to special interrogatories which, together with International's stipulation on the reasonableness of the damages, rendered International liable to Rubright for the sum of $90,000.

Prior to trial and again after the verdict had been reached, both parties stipulated that the court determine whether the plaintiff should recover interest from the time of settlement and that given the confines of this record, the court would have the power to resolve all issues of fact and questions of law inherent in such a decision.

The question submitted by that stipulation is the subject of this opinion.

In its brief on this matter, International takes the position that Rubright's suit for contribution grows out of a personal injury tort suit and therefore retains all the legal characteristics of a personal injury suit. International further argues that the rule of McGonnell v. Railways Co., 234 Pa. 396, 83 A. 282, (1911), barring additional damages in the nature of interest for delay in personal injury suits should be applied in the case *sub judice*. In opposition, Rubright argues that Pennsylvania law classifies a suit for contribution as an action in assumpsit or contract and that such suits do not retain any tort identity. Rubright further points out that when the amount of damages is fixed or determined (as they were in this case by the stipulation that the Cowan settlement was reasonable), and a jury subsequently finds a party liable to pay such damages, Pennsylvania law permits additional damages for delay in receiving the payment.

## I

As indicated, the basic question before this court is whether or not a personal injury tortfeasor who settles *all* of the injured party's claims may obtain interest on the *pro rata* share of the settlement fee which is shifted to a second party (by way of contribution) when a jury subsequently finds that the second party is jointly liable with the settling tortfeasor. Before we can answer this basic question, we must examine the nature of the right to contribution and the method used by a settling tortfeasor to secure that right.

## II

Recovery under the Pennsylvania Uniform Contribution Among Joint Tortfeasors Act has been characterized as a recovery in assumpsit or contract rather than one in tort. Harger v. Caputo, 420 Pa. 528, 218 A.2d 108 (1966); Martin v. United States, 162 F.Supp. 441 (D.C. 1958); Parker, to use of Bunting v. Rodgers, 125 Pa.Super. 48, 189 A. 693 (1937).

In fact, the right to contribution accorded by the Pennsylvania statutes to one joint tortfeasor against the other creates a cause of action of a different nature from the tort action which was the subject of the original suit or claim.

Moreover, the right to recover under the principles of contribution embodied in the Pennsylvania Uniform Contribu-

tion Among Joint Tortfeasors Act, 12 P.S. § 2082 et seq., is a right

. . . which arises under the substantive law of the state. It has its foundation in, and is controlled by, the principles of equity and natural justice . . ..

The doctrine of contribution rests upon the principle that when the parties stand in aequali jure the law requires equality, which is equity, and one of them is not to be obliged to bear a common burden in ease of the rest. Thus, the doctrine is founded on the broad equitable maxim that equality is equity, and that he who receives a benefit must incur the burden.

The right of contribution is also explained as a quasi contractual right which arises by reason of an implied engagement on the part of each obligor to help bear the common burden. P.L.E., Contribution § 2.

In short, the right of contribution has been viewed by the Pennsylvania courts as a dual one—a right sounding in equity and a right at law sounding in quasi contract.

### III

█ The right to contribution arises in the following manner. If one joint tortfeasor settles a case with an injured plaintiff, and in the process extinguishes the liabilities of the other joint tortfeasors, the law implies a quasi contractual obligation or an equitable one on the part of those other joint tortfeasors to reimburse the settling tortfeasor for their pro rata shares of the settlement fee. See P.L.E., Contribution § 8.

█ When, as in the present case, settlement occurs before the injured plaintiff has proven his original case at trial, the settling tortfeasor cannot enforce his right to contribution unless in a separate proceeding he proves that:

(1) The settlement figure was reasonable.

(2) The parties from whom he seeks contribution were in fact joint tortfeasors. Swartz v. Sunderland, 403 Pa. 222, 169 A.2d 289 (1961), Restatement Restitution § 86(d).

### IV

█ Against the backdrop of *Swartz*, supra, the theory of plaintiff's case is that the plaintiff settled all of Cowan's claims for $180,000 and in so doing conferred a benefit upon its co-tortfeasor, International. Having received this benefit, International has breached its equitable obligation or its implied promise (quasi contractual promise) to pay Rubright one-half of whatever amount was reasonably paid in settlement with Cowan.

The final element of Rubright's theory and the one which concerns us here is Rubright's request for additional damages in the nature of interest for International's delay in assuming its half of the reasonable settlement figure. We note at the outset that Rubright is not asking for interest qua interest, but it does desire additional damages in the nature of interest for International's delay in paying a sum due under either a quasi contractual duty or an equitable duty.[1]

1. Pennsylvania tort law as it applies to the availability of additional damages in the nature of interest is well outlined in several cases that we quote here in part. These cases provide background information and set forth principles applicable in tort cases that we will extend by analogy to the instant case which involves a contractual and/or an equitable duty.

"Interest, as such, is recoverable only where there is a failure to pay a liquidated sum, due at a fixed day, and the debtor is in absolute default. It cannot, therefore, be recovered in actions of tort, or in actions of any kind where the damages are not in their nature capable of exact computation, both as to time and amount. In such cases, the party chargeable cannot pay or make tender until both the time and the amount have been ascertained, and his default is not therefore of that absolute nature that necessarily involves interest for the delay. But there are cases

■ The law controlling the allowance of additional damages in the nature of interest for breach of a quasi contractual duty is summarized by the Restatement of Contracts § 337, which states that:

If the parties have not by contract determined otherwise, simple interest at the statutory legal rate is recoverable as damages for breach of contract as follows:

(a) Where the defendant commits a breach of a contract to pay a sum of money, or to render a performance the value of which in money is stated in the contract or is ascertainable by mathematical calculation from a standard fixed in the contract or from established market prices of the subject matter, interest is allowed on the amount of the debt or money value from the time performance was due, after making all the deductions to which the defendant may be entitled.

(b) Where the contract that is broken is of a kind not specified in Clause (a), interest may be allowed in the discretion of the Court, if justice requires it, on the amount that would have been just compensation if it had been paid when performance was due.

Comment (d) to this section states that:

The fact that the defendant in good faith denies the existence of the debt or other duty asserted by the plaintiff or denies that he has committed any breach of contract, does not prevent the allowance of interest as damages for his breach.

Section 337 has been expressly adopted and followed in Pennsylvania cases.

sounding in tort, and cases of unliquidated damages, where not only the principle on which the recovery is to be had is compensation, but where, also, the compensation can be measured by market value, or other definite standards. Such are cases of the unintentional conversion or destruction of property, etc. Into these cases the element of time may enter as an important factor, and the plaintiff will not be fully compensated unless he receive not only the value of his property, but receive it, as nearly as may be, as of the date of his loss. Hence it is that the jury may allow additional damages in the nature of interest, for the lapse of time. It is never interest as such, nor as a matter of right, but compensation for the delay, of which the rate of interest affords the fair legal measure.

"These principles have been very recently affirmed by this Court in Penna. etc. R. Co. v. Ziemer, 124 Pa. [560,] 571, [17A. 187,] and Plymouth Tp. v. Graver, 125 Pa. [24], 37, [17A. 249] and, although, as said by our brother Clark in the last case, there is some conflict in the decisions: (Railroad Co. v. Gesner, 20 Pa. [240,] 242; Del. etc. R. Co. v. Burson, 61 Pa. [369,] 380; Pittsb. S. Ry. Co. v. Taylor, 104 Pa. 306; and Allegheny City v. Campbell, 107 Pa. 530), it is not so much in regard to the principles, as in the mode of expression. The contest has been whether the allowance should be made or not; and the name by which it should be called, whether interest or compensation for delay, measured by the rate of interest, received little attention, and it was incautiously said that interest was or was not to be allowed. The distinction, however, is important, for failure to observe it leads to confusion, as in the present case. Interest is recoverable of right, but compensation for deferred payment in torts depends on the circumstances of each case. The plaintiff may have set his damages so inordinately high as to have justified the defendant in refusing to pay, or in other ways the delay may be plaintiff's fault; or, the liability of defendant may have arisen without fault, as in Weir v. Allegheny Co., 95 Pa. 413." Richards v. Citizen's N. Gas Co., 130 Pa. 37 at p. 39, 18A. 600 (1889).

"In a personal injury case the damages are assessed as of the date of the trial and not of the injury. Hence there can be no general compensation for delay. 1 Sedgwick on Damages (8th Ed.) § 320; Pittsburgh Southern Ry. Co. v. Taylor, 104 Pa. 306, 317." McGonnell v. Railways Co., 234 Pa. 396, 83 A. 282 (1911).

As indicated by the above quote, when the amount of damages can be determined by reference to market value or other definite standards, additional compensation in the nature of interest is obtainable (at a jury's discretion) from the time of the injury despite the fact that liability was not conclusively determined until trial.

Lewis v. Guseman, 103 F.Supp. 735 (W. D.Pa.1952); In Re Guardian Bank and Trust Co., 330 Pa. 411, 199 A. 171.

The law which controls the allowance of additional damages in the nature of interest for the failure to perform an equitable duty (e. g., returning the value of a benefit conferred by making contribution) is set forth in the Restatement of Restitution § 156, which states that:

Subject to the rules stated in § 157, a person who has a duty to pay the value of a benefit which he has received, is also under a duty to pay interest upon such value from the time he committed a breach of duty in failing to make restitution if, and only if:

(a) the benefit consisted of a definite sum of money, or

(b) the value of the benefit can be ascertained by mathematical calculation from the terms of an agreement between the parties or by established market prices, or

(c) payment of interest is required to avoid injustice.

The comments appended to this section do not indicate what effect a good-faith, non-prevailing liability defense would have on the right to interest from the time of the breach. Logic, however, compels us to conclude that such a defense would not affect that right. Otherwise the rule would have no purpose and would merely restate the rule that automatically grants interest on judgments. See 12 P.S. §§ 781 and 782.

A comparison of § 156 Restitution with § 337 Contracts reveals that § 156 merely restates the same principles embodied in § 337. The editors of the Restatement of Restitution indicate that the principles set forth therein are equally applicable to breaches of equitable as well as quasi contractual duties.[2]

As we have noted, the right to contribution is both equitable and quasi contractual in nature, but in light of the applicability of the Restatement of Restitution to equitable obligations and quasi contractual obligations, we need only discuss the damage principles set forth in § 156 of the Restatement of Restitution.

Clearly, interest can be granted under subsections (a) and (b) of § 156 set forth above *only* when the sum due is established or is ascertainable with some degree of mathematical certainty. The amount of International's obligation herein is equivalent to one-half of the amount of payments *reasonably* made in settlement of Cowan's injuries. Swartz v. Sunderland, supra. The reasonableness of the settlement fee in the present case cannot be determined without first

---

2. THE RIGHT TO RESTITUTION (Quasi Contracts and Kindred Equitable Relief)
INTRODUCTORY NOTE
*Scope.* Part I includes a statement of the principles and rules under which a person is entitled to restitution irrespective of the remedy by which such restitution is obtained. It includes, therefore, a statement of the rules applicable to situations in which, before the development of modern procedure, an action of general assumpsit could have been brought to secure restitution. Such situations are within the subject of quasi contracts, which is herein dealt with in full, . . .. This part of the Restatement of this Subject is now, however, limited to situations in which there can be recovery at law; it includes also situations in which there is a remedy in equity for the payment of money, for the return of a specific thing, or for the establishment of a lien. The principles by which a person is entitled to restitution are the same whether the proceeding is one at law or in equity, although in some cases the limitations which the courts at law imposed upon themselves in rendering a judgment have prevented actions at law where restitution would be allowed in equity, and in many situations a proceeding in equity is denied because the remedy at law is adequate. The rules stated in this part are made without reference to the question whether the remedy is at law or in equity, except where the results reached in actions at law differ in substance from those reached in proceedings in equity.

gauging the value of Cowan's injuries. However, personal injuries do not lend themselves to precise evaluation as evidenced by the fact that Pennsylvania law does not allow interest as part of a damage award for personal injuries. McGonnell v. Pittsburgh Railways Co., 234 Pa. 397, 83 A. 282 (1911) [quoting Sedgwick on Damages (8th Ed.) § 320]; McPherson v. Pittsburgh Railways Co., 50 Pa.Super. 233 (1912). See footnote 1, supra. While neither of these cases clearly explains the rationale for barring interest as part of the damage award for personal injuries, the *McGonnell* court did state that:

> In a personal injury case the damages are assessed as of the date of the trial and not of the injury. Hence there can be no general compensation for delay.

Implicit in that statement is the fact that evaluating a personal injury is a complex and imprecise process which the law delegates to the fact finders' subjective mental processes. When, by virtue of their group subjective analysis, jurors put a dollar value on a plaintiff's personal injuries, the court usually adopts that valuation as a form of absolute truth if it is within the bounds prescribed by damage principles. While we encourage parties to evaluate their cases for purposes of settlement, courts cannot obligate a defendant to make an objective, advance reading as to what damage figures the fact finder will produce after considering intangibles like loss of future earnings and pain and suffering. In the absence of an objective standard whereby a defendant himself can determine what he should pay a plaintiff, the policy of *McGonnell* teaches that there can be no basis for finding a delay in making payment if the defendant chooses to use the trial process to establish the amount of plaintiff's damages. See §§ 300, 301 Sedgwick on Damages (9th Ed.) for another statement of this rationale and note that these sections appear to be successors to § 320 of Sedgwick (8th Ed.), which is quoted as authority in the *McGonnell* case.

During the trial on this matter, the jury determined that International has an obligation to pay a sum which *McGonnell* indicates is not precisely determinable prior to trial, (e. g., one-half of the amount reasonably paid in settlement of Cowan's personal injury claims). The vagueness of that kind of figure prior to verdict and judgment would normally bar interest under § 156(a) and (b). The plaintiff, however, points out an additional fact which requires further discussion. International stipulated that the Cowan settlement of $180,000 was reasonable. Rubright argues that this stipulation reduced International's obligation to a specific and definite amount which ought to gather interest in accordance with subsections (a) and (b). We cannot agree. A stipulation as to the reasonableness of a personal injury settlement figure should not relate back to the time of settlement. Stipulations are made to eliminate issues from a case and thus assist the parties and the courts in their efforts to secure justice. In short, a stipulation serves as a surrogate for a finding of fact made during the trial process and therefore we should regard it conceptually as a fact found during trial and integrated into the verdict. To hold otherwise would discourage the use of stipulations and would unnecessarily lengthen and complicate trials. Given this view, International's stipulation that the Cowan settlement was reasonable serves as the legal equivalent of a jury determination which should be given effect only as of the time of trial. Assuming that the obligation to pay half of a reasonable personal injury settlement arose at the time of settlement, the size of that reasonable settlement could not be determined prior to the trial by reference to an objective standard such as contemplated in § 156(a) and (b). Plaintiff is not entitled to interest under § 156(a) and (b).

Turning to subsection (c) of § 156, we conclude that under certain circumstances which outweigh the policies underlying § 156(a) and (b), we

may grant additional damages in the nature of interest so as to do "justice." No such circumstances are apparent in this case. International defended strongly and might have prevailed if the fact finder had been persuaded. In the absence of circumstances which countervail and overwhelm the interest prohibiting principles of § 156(a) and (b), we conclude that the bounds of "justice" are co-extensive with those subsections. The law embodied in those subsections indicates that additional damages in the nature of interest are not properly available when the amount of liability is not determinable by reference to some objective standard. Pennsylvania law indicates that personal injuries are not susceptible to that type of precise valuation. When, as in this case, we have a contractual or equitable duty which takes its value derivatively from the suit value of a personal injury and there are no special circumstances requiring the application of § 156(c), we are obligated to measure the value of such a duty in keeping with established personal injury damage principles. Applying § 156(a) and (b) to that type of measurement, we find it too imprecise to allow additional damages in the nature of interest.[3]

An appropriate order will be entered.

#### ORDER

And now, this 2nd day of May, 1973;

In consideration of the foregoing opinion, it is ordered that judgment be and is hereby entered in favor of the plaintiff and against the defendant in the amount of $90,000 with interest at six percent from October 16, 1972.

#### On Motion for Judgment N.O.V.

On August 7, 1967, Charles Hohmann, an employee of W. D. Rubright Company, was operating a Rubright-owned International Harvester six-wheel truck on Butler Avenue in New Castle, Pennsylvania. When the International truck began downgrade on Butler Avenue, a length of copper air line incorporated in the rear axle braking system ruptured. A witness in a following automobile heard a loud bang and observed a puff of air emitted from the area of the truck's axle assembly. At this point the truck's braking system began to lose air pressure rapidly. Mr. Hohmann began to pump the brakes rather than applying them constantly and, in so doing, increased the speed with which the air bled from the braking system. With its air brakes and air horn inoperable, the truck went out of control and collided with an automobile operated by Jack Cowan.

The collision inflicted serious injuries upon Cowan, who responded by suing both Rubright and International Harvester in the Court of Common Pleas of Lawrence County. Before Cowan's action came to trial, Rubright settled Cowan's injury claims for $180,000 and obtained his general release in favor of both Rubright and International Harvester.

On April 29, 1968, Rubright initiated this suit against International Harvester in order to obtain contribution under the Uniform Contribution Among Joint Tortfeasors Act. 12 P.S. § 2082, et seq. Plaintiff's case was based on the theory that while its driver was negligent in causing Cowan's injuries, the defendant was also at fault in that the truck's braking system was defective, (Restatement of Torts 2d § 402A) and/or negligently designed (Restatement of Torts 2d § 398). Specifically, the plaintiff maintained that a length of copper air tubing connecting the rear axle braking cylinders was improperly designed and/or defective in that the tubing was unclamped and free to vibrate—a condition that would ultimately cause a stress fracture and a resultant failure in the

---

3. As indicated in *Richards*, footnote 1, supra, interest could be obtained on property damage. However, as the record fails to indicate if any of the settlement fee was apportioned to property damage, and as we find it to be Rubright's burden to show such apportionment, we must regard the settlement figure as wholly attributable to physical injuries.

braking system. Defendant, on the other hand, maintained that Rubright had substantially altered the configuration of the truck's rear axle braking system by replacing the system's original copper tubing with copper tubing having thinner walls, and by installing this replacement tubing with flair fittings which produce greater stress concentrations and which are "less reliable" than the ferrule fittings originally used by the manufacturer. The defendant also argued that these changes in the rear axle braking system created new structural weaknesses which in turn caused the brake failure and accident.

On the first day of trial the parties stipulated that the Rubright-Cowan settlement figure was reasonable. At the close of all the evidence the case was submitted to the jury on special interrogatories.[4] The jury answered those special interrogatories so as to find defendant liable to plaintiff for one-half of the $180,000 settlement figure.[5, 6] The defendant then filed timely motions for judgment n. o. v. or, in the alternative, for a new trial.

Defendant's motion for judgment n. o. v. sets forth defendant's contentions in 23 separate but partially repetitive paragraphs. Defendant's motion for a new trial sets forth contentions in 13 separate paragraphs, some of which are repetitious among themselves or repeat allegations set forth in defendant's motion for judgment n. o. v.

Defendant's brief in support of both motions restates these arguments differently (under 9 major headings), adding some new propositions while dropping several mentioned in the original motions. For the sake of clarity and brevity and believing that the brief states defendant's position, we will address defendant's contentions as they are stated in his brief. Those contentions are:

I. The plaintiff does not have a proper cause of action against the defendant in this matter, particularly under the uniform contribution among Joint Tortfeasors Act.

II. The plaintiff failed to prove or establish that any negligence or liability of the defendant was a proximate

---

4. And now, October 16th, 1972, we, the jury empaneled in the above-entitled case, having been required by the Court to return a special verdict in the form of special written findings upon the issues of fact submitted to us by the Court, answer such interrogatories as follows:

I

(1) On the date of the accident was Mr. Hohmann negligent in the operation of his truck?
ANSWER: Yes
(2) If your answer to question I(1) above was yes, was Mr. Hohmann's negligence a proximate cause of the accident?
ANSWER: Yes

II

(1) On the day of the accident did the brake line assembly on the rear rear axle of the truck exist in substantially the same condition as when it was manufactured?
ANSWER: Yes
(2) If your answer to question II(1) above was yes, then was the rear rear axle brake assembly in a defective condition so as to be unreasonably dangerous?
ANSWER: Yes

(3) If your answer to II(2) above was yes, then was that defective condition a proximate cause of the accident?
ANSWER: Yes

III

(1) Was International Harvester negligent in designing the rear rear axle brake assembly on this truck?
ANSWER: Yes
(2) If your answer to question III(1) above was yes, was that negligence a proximate cause of the accident?
ANSWER: Yes

IV

(1) Was W. D. Rubright Company negligent in repairing or maintaining the rear rear axle brake assembly on this truck?
ANSWER: Yes
(2) If your answer to question IV(1) was yes, was that negligence a proximate cause of the accident?
ANSWER: No

5. See Swartz v. Sunderland, 403 Pa. 222, 169 A.2d 289 (1961).

6. The parties submitted the question of additional damages in the nature of interest to the court with the understanding that the court could make any and all findings necessary to a decision.

cause of the accident of August 7, 1967.

III. The plaintiff failed to establish and prove that the truck involved in the accident was, on the date of the accident, in substantially the same condition as on the date on which it had been sold by the defendant.

IV. The negligence of the plaintiff's driver was a superseding cause of the accident and, as such, insulated the defendant from any possible liability.

V. Were the answers of the jury and the resulting verdict against or contrary to the law?

VI. The verdict was against the evidence and/or the weight of the evidence.

VII. The answers of the jury to certain of the special interrogatories were unsupported by the evidence and were contradictory to the evidence, so as to require the award of a new trial.

VIII. The court committed reversible trial error in refusing to admit the reports of Pittsburgh testing laboratory into evidence.

IX. The court committed reversible error in refusing the request of the defendant for action relating to certain remarks of plaintiff's counsel made during his closing argument.

We will consider defendant's contentions *seriatim*, but we note that we will have to consider them relying on our recollection of the facts because we have not been favored with a record of the proceedings at trial.

I

The first major question raised in defendant's motion is whether Pennsylvania's Uniform Contribution Among Joint Tortfeasors Act will permit a negligence tortfeasor (herein Rubright via the person of its driver Hohman) to obtain contribution from a 402A tortfeasor (herein International Harvester via the defective nature of the rear axle braking system of the International truck involved in the Cowan accident).

In deciding this point we assume for the moment that the theoretical principles of causation permit a jury to find that common law negligence and a defect operate as concurrent causes of an injury.[7] An inquiry reveals that the authorities are split on this issue.[8] [The defendant has cited several groups of cases in support of its position on this issue.]

Representative of the cases the defendant cites is Cage v. New York Central R.R. Co., 276 F.Supp. 778 (W.D.Pa. 1967). In *Cage*, after tracing the genesis and evolution of the right to contribution, Judge Weber interpreted the Pennsylvania Uniform Contribution Among Joint Tortfeasors Act so as to hold that the act embodies equitable principles and that equity will not allow a wanton and wilfully negligent party to extract contribution from a party that is merely negligent. The *Cage* ratio decidendi being that where one tortfeasor is more culpable in the moral sense than another, equity prefers that the burden of making the injured party whole fall, upon the tortfeasor with the more onerous type of "guilt." The *Cage* line of cases, as it relates to the present issue, culminates in Fenton v. McCrory, 47 F. R.D. 260 (W.D.Pa.1969), wherein the court held that a defendant manufacturer who was sued under 402A could not join a third-party defendant from whom the manufacturer sought contribution based upon alleged negligent misuse of

7. We note that the jury also found that International had *negligently* designed the rear axle braking system, and that this design negligence concurred with Mr. Hohman's negligence to cause the Cowan accident. This finding would permit contribution regardless of our ruling on arguments 1 and 2 as advanced by the defendant.

8. The appeal taken in the unreported case of Chamberlain v. Carborundum Co., C.A. 68–1235, decided by Judge Sorg on May 19, 1972, has focused on the general questions of shared liability between a 402A defect and a negligence tortfeasor.

the product. In its opinion the court stated that:

> The plaintiff proceeded against the defendant solely under the strict liability imposed upon the manufacturer or seller of a product which at the time of sale contains a dangerous defect, under the Rule of § 402A of the Restatement of Torts, 2nd. This is the law of Pennsylvania. Webb v. Zern, 422 Pa. 424, 220 A.2d 853 (1960). Defendant joined as a third-party defendant the playmate who had shot the arrow at the injured minor plaintiff, claiming the right of contribution against a joint tort feasor. Immediately prior to the selection of the jury, the plaintiff informed the Court that the sole theory of liability to be presented would be under § 402A of the Restatement of Torts, 2d. Third-party Defendant Grube then moved to dismiss the third-party complaint and we granted that motion. We did so because we believe that there is no right of contribution between a party whose liability is imposed under the strict liability rule of § 402A, Restatement of Torts, 2d., and a party whose liability is based on negligence or want of due care. Strict liability is imposed regardless of the exercise of due care by the person sought to be charged; contribution exists between tort-feasors both of whom are charged with a want of due care proximately causing the accident. The history of the development of the doctrine of the right of contribution between joint tort-feasors in Pennsylvania, beginning with the judicial declaration of such right in derogation of the common-law rule of no contribution and the adoption and subsequent interpretation of the Uniform Contribution Among Joint Tort Feasors Act, 12 P.S. § 2082 et seq., indicates to us that no such right exists between those whose liability is imposed under different grounds. See

Cage v. New York Central R. R. Co., D.C., 276 F.Supp. 778, affd. per curiam 386 F.2d 998 (3 Cir. 1967). There is no authority in Pennsylvania on this point, and as far as we can determine no judicial construction or commentary elsewhere. The development of the 402A rule is recent, and its consequences have not yet been fully explored in litigation. We have previously followed this rule in similar cases in the belief that the Pennsylvania appellate courts would so decide. *Fenton,* at p. 262.

Sponsky v. Standard Triumph Motors, Inc., C.A. 66–164 (Judge Sorg, W.D.Pa., March 20, 1970), can be read to stand for the same proposition advanced in *McCrory.* In *Sponsky,* the special interrogatories and the instructions given to the jury indicate that either the court felt that a 402A defect and an act of common law negligence could not act together as concurrent causes *or* that contribution should not be permitted where the "wrongs" committed by the parties are of different natures.[9]

Plaintiff, on the other hand, cites a series of cases which imply that courts should allow contribution even if the two parties are tortfeasors under different theories. Colosimo v. May Department Store, 466 F.2d 1234 (3 Cir. Filed July 27, 1972). [Original 402A defendant was permitted to join third-party defendant on a theory of negligence. Present Federal third-party practices require that original defendant join third-party defendants only on theories of shared liability, e. g., joint or primary and secondary.]

The final and most important case cited by the plaintiff is the unreported case of Chamberlain v. Carborundum Co., C.A. 68–1235 (opinion rendered by Judge Sorg on May 19, 1972). *Chamberlain* squarely addresses itself to the issue of whether contribution should be allowed between a 402A tortfeasor and a

---

9. The continued vitality of *Sponsky* is in serious doubt in light of Judge Sorg's most recent decision on this issue. That decision, embodied in the *Chamberlain* case, is discussed at page 5 of this opinion.

negligence tortfeasor. At page 5 of his opinion, Judge Sorg wrote that:

This court concludes that Carborundum [original 402A defendant] and Berwind [negligence defendant] are joint tortfeasors in *pari delicto* whose derelictions concurred in producing the single result about which the plaintiff complains, the former under the duty to the plaintiff imposed by § 402(a) . . . and the latter by virtue of the duty incurred through the Pennsylvania Department of Labor and Industry Safety Regulations. . . . Contribution between them is, therefore, appropriate.

We feel that *Chamberlain* sets forth the appropriate rule. The Pennsylvania Uniform Contribution Among Joint Tortfeasors Act embodies a policy which favors spreading the cost of compensating an injured party for his injuries among the parties who cause those injuries. The general application of this policy serves the best interests of justice. We agree with the decision expressed in *Cage* to the effect that the equitable principle of contribution should not be used to transfer part of the obligation to pay compensation from a party that has acted quasi intentionally so as to do a wanton and wilfully negligent act to a party that was merely negligent. Nonetheless, we do not believe that the principles set forth in *Cage* should be expanded to bar contribution among joint tortfeasors responsible for non-intentional torts. We expressly hold, therefore, that the Pennsylvania Uniform Contribution Among Joint Tortfeasors Act permits contribution between joint tortfeasors when one is responsible for a 402A defect and the other is responsible for an act of negligence.

## II

The defendant contends that "the plaintiff failed to prove or establish that any negligence or liability of the defendant was a proximate cause of the accident of August 7, 1967." Explaining this contention defendant goes on to argue that "the alleged wrongs were so disparate as to make it impossible for both of them [defendant and plaintiff] to have proximately cause the accident." Defendant's brief, p. 20. In response to this argument, we hold that it is consistent with the theoretical principles of causation for a jury to find that a 402A defect and negligence have acted as concurrent causes. With regard to this issue, we note that similar holdings are necessarily inherent in *Chamberlain* and in many federal third-party practice cases which permit a negligence defendant to join a 402A defendant or vice-versa.

## III

The defendant maintains that plaintiff failed to prove that the truck involved in the accident was, on the date of the accident, in substantially the same condition as on the date on which it had been sold by the defendant. We state at the outset of the discussion that the United States Court of Appeals for the Third Circuit has indicated that such proof is unnecessary. Dennis v. Ford Motor Co., 471 F.2d 733, filed January 5, 1973 (plaintiff need only show that the product reached the user substantially unchanged—changes subsequent to delivery are to be considered only as they relate to causation). Nonetheless, as these proceedings were held before the *Dennis* decision, this court submitted special interrogatories which in effect asked whether or not the truck was in substantially the condition of its manufacture on the date of the accident. The jury found that it was. In view of the general proposition of logic which indicates that the whole must be the sum of all its constituent parts, we interpret the jury's finding as indicating that the truck was delivered to the ultimate user without substantial change and that even up to the time of the accident no substantial change occurred.

In measuring plaintiff's proofs on this issue of substantial change, we must keep in mind that we are asking the plaintiff to prove a negative proposition. Plaintiff's and defendant's evidence

showed that the portion of copper tubing which failed had been installed at the factory pursuant to a design which did not provide for securing the tube with a clamp.

■ The evidence further revealed that the original unclamped manufacturer's tubing had failed, causing a minor accident. Testimony also revealed that after this minor accident, the manufacturer's original tubing had been replaced by copper tubing with thinner walls, but that this tubing met S.A.E. requirements. The testimony also revealed that this new tubing had been installed with "flair" fittings instead of the "ferrule" fittings used at the time of manufacture.

Considerable testimony was heard on the effect of these changes as they might affect the structural stability of the rear axle braking system, much of it from the defendant's expert, Mr. Bishton. Bishton testified that the rear axle braking system was designed to incorporate tubing thick enough to withstand some vibration and that therefore the designers did not feel that a vibration reducing clamp was necessary. On this point Bishton drew a very rough graph which demonstrated that as vibration increases and tube wall thickness decreases, the chances of tube stress fracture also increases. Finally, Bishton testified that the failure of the tubing on the Rubright truck was a stress fracture, but that in his opinion the fracture was caused by the reduction in tube wall thickness and the use of flair fittings which concentrate stresses at specific points of the tubing.

After considering the evidence, the jury found the original configuration defective and negligently designed as well. The jury also found that the changes made in that configuration were insubstantial. Finally, the jury found

that the defect in the braking system (the absent clamp) and/or its negligent design had acted as a proximate cause of Cowan's accident.

From the evidence, we think that the jury fairly concluded that there had been no substantial change in the truck which would have affected the braking system so as to cause this accident, and that the accident occurred as a result of an original defect which underwent minimal changes that did not affect responsibility for causation.[10]

## IV

■ Defendant argues that the negligence of Rubright's driver Hohman was a superseding cause of this accident. In making such a contention, defendant necessarily concedes that Hohman was negligent, *and* for purposes of this argument only necessarily concedes that there was a defect and failure in the braking system. We have already indicated our belief that the principles and laws of causation permit a 402A defect and negligence to act together as proximate causes of the same accident. Against the backdrop of that holding, if we have evidence of a 402A defect and evidence of negligence, the question of causation is for the jury.

## V

The defendant maintains that the answers of the jury and the resulting verdict were contrary to the law. Defendant argues two propositions at this point. First, defendant says that there was no evidence to show that the truck was in substantially the condition of its manufacture on the date that the accident occurred. Second, defendant states that there cannot be a right of contribution when the wrong allegedly committed by one party is totally different in degree and theory from the wrong com-

10. The jury's finding that the changes in the rear axle braking system were insubstantial and that this basically unchanged braking system caused the accident is easily justified in light of the evidence, which indicates that the manufacturer's tubing as originally installed also failed. That evidence could allow a reasonable juror to conclude that the stress fracture would have occurred even if the replacement tubing had been installed exactly as the original tubing.

mitted by the other party. We have already disposed of both of these arguments.

### VI

Defendant argues that the verdict was against the evidence and/or the weight of the evidence. Defendant bases this contention on its belief that plaintiff failed to prove that on the date of the accident the truck was in substantially the condition of its manufacture. We have considered this argument earlier and found it without merit.

### VII

In arguing that the jury's answers to the special interrogatories were unsupported by and contradicted by the evidence, defendant sets forth three propositions. First, that there was no evidence to show that the vehicle was in substantially the same condition on the date of the accident as on the date of manufacture. We have already disposed of this argument. There was no evidence of any change in the rear axle braking system prior to delivery to the user and the specific changes made after delivery were found not to be substantial. The jury clearly concluded that the accident occurred because the tube was unclamped rather than as a result of the replacement tubing and the method of its installation.

■ Defendant also argues that the record does not contain any evidence from which the jury could have concluded that the rear axle braking system was negligently designed.[11] We do not agree. The record shows that the brake tubing was installed pursuant to a design that left it unclamped and free to vibrate. Mr. Bassett testified that vi-

brations could "tire" metal and lead to a fatigue fracture. Mr. Bishton later identified the brake line rupture as a fatigue fracture. He testified that a clamp would have limited the vibrations and reduced the fatiguing effect that vibrations have on metal tubing. From this evidence the jury could have properly concluded that the failure to reduce fatiguing vibrations by means of an inexpensive clamp was negligent design.

■ Finally, defendant argues that the evidence did not support the jury's finding that Rubright was not negligent in servicing or repairing the truck's rear axle braking system. Specifically, defendant contends that the installation of new thin-walled tubing by means of "flair" fitting constitutes negligence. In stating that we feel that was a question for the jury, we note the evidence showed that flair fittings are commonly used by mechanics throughout the trucking industry, and that the replacement tubing met S.A.E. specifications.

### VIII

During the course of the trial, defense counsel attempted to offer investigative reports prepared by experts employed by the Pittsburgh Testing Laboratory. These reports were prepared at the request of plaintiff's counsel and recited conclusions based upon inspection of and testing of components from the rear axle braking system of the Rubright truck.

■ The theory behind defendant's offer was that these investigative reports were business records of Pittsburgh Testing Laboratory and as such were admissible as exceptions to the hearsay evidence rule. We rejected the offer as made and defendant now argues that the rejection constitutes reversible

---

11. Defendant's brief on this point indicates the defendant believes that all opinions expressed by plaintiff's expert have been stricken from the record. This belief does not square with the facts. Upon proper motion by the defense, we struck all of Mr. Bassett's opinion testimony which related to the cause of the rupture in the brake tubing because, by Mr. Bassett's

own admission, that opinion testimony was based on the Pittsburgh Testing Laboratory report which was not in evidence. All other testimony by Mr. Bassett remains in the record.

NOTE: Defendant's expert, Mr. Bishton, later described the brake tubing rupture as a stress fracture caused in part by vibrations.

error. The hearsay rule has one basic purpose. When a statement is offered for the truth of that statement, the rule insists that the maker be brought before the jury so that it can evaluate his credibility and thereby gauge the truth of the statement itself. All the exceptions to the hearsay rule are based on the belief that something about the out-of-court statement insures or tends to insure its truthfulness, and therefore the jury need not evaluate the maker's demeanor for signs of credibility. The Business Records exception to the hearsay rule is in keeping with this theory of inherent believability. Giant businesses involve many departments which must interact as well as deal with outsiders over long periods of time. Precise communication and accurate records are extremely important if these interactions are to succeed. A company cannot lie to itself on a day-to-day basis and survive because business records serve as the corporation's memory.

■ So it follows that records made in the ordinary course of a company's business will be truthful. On the other hand, if records are made with the thought of using them at trial, they will not necessarily have the truthfulness inherent in the day-to-day records that are made in the ordinary course of business. Without this inherent believability, the jury should be permitted to view the demeanor of the maker in order to measure his credibility. The Pittsburgh Testing Laboratory reports do not qualify as business records because they were prepared specially for trial. As in this case, when expert reports are prepared at the behest of a party involved in litigation, it creates the possibility that an overzealous expert might abandon the impartial objectivity that is usually attributed to men of science or specialized learning, and move toward the role of an advocate. The right of cross-examination is the only effective means of dealing with this possibility. Moreover, when an expert performs a complex analytical procedure before arriving at some highly technical conclusions, the opposing party should always have the right to examine the validity of the methodology which brought the expert to his conclusions. Cross-examination of the expert is the best way to evaluate this methodology. We conclude that our refusal to admit the reports as offered was not error.

IX

■ Defense counsel feels that given the posture of the case as it went to the jury, plaintiff's repeated references to Mr. Cowan's "injuries" were unfair arguments which necessitate the granting of a new trial. We agree with the defendant that plaintiff's repeated references to Cowan's injuries were not really germane to the central issue of whether or not International was liable to Rubright.

We do not conclude, however, that plaintiff's repeated use of the word "injuries" prejudiced the jury in favor of Rubright. The opening arguments informed the jury that Cowan had been injured and described the role those injuries played in the instant case. We do not believe that subsequent references to those injuries without any attempt to use excessively descriptive and colorful language would have had any prejudicial impact upon the jury.

Defendant's motions for judgment n. o. v. and for a new trial must be denied.

An appropriate order will be entered.