**In the Matter of READING COM-PANY, Debtor.**

**Petition of UPPER MERION AND PLY-MOUTH RAILROAD for $15,000. Indemnity and/or Contribution for Settlement with Emil A. Sabol.**

No. 71–828.

United States District Court,
E. D. Pennsylvania.

Sept. 23, 1975.

**1250**

Richard L. Goerwitz, Jr., Philadelphia, Pa., for plaintiff.

Howard H. Lewis, Walter R. Milbourne, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for Trustees.

## MEMORANDUM AND ORDER NO. 904

DITTER, District Judge.

Before me is the petition of the Upper Merion and Plymouth Railroad to obtain indemnity or contribution for a settlement it reached in an action brought by one of its employees injured on property belonging to the Reading Company, a railroad in reorganization under Section 77 of the Bankruptcy Act, 11 U.S.C. § 205. In disposing of this matter, I must determine when petitioner's claim should be deemed to have arisen, its nature, and the impact of an agreement by debtor's counsel to contribute to petitioner the amount now sought.

The facts giving rise to this petition are not complex. On July 29, 1971, Emil A. Sabol, an employee of petitioner, was injured in the course of his employment while working on real property owned, controlled, and maintained by the Reading. Over two years later, and long after November 23, 1971, when debtor filed its petition for reorganization, Sabol instituted suit against petitioner under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* Petitioner joined the debtor as a third-party defendant in the action on the ground that the Reading was liable to the Upper Merion and Plymouth for contribution or indemnity in the event of a finding of liability against the latter. Sabol's suit was settled in May, 1974, on the agreement of petitioner to pay him $30,000., plus amounts previously tendered, and the agreement of debtor's attorney for it to contribute $15,000. to petitioner "in satisfaction of its claim for indemnity and contribution."

Trustees contend that petitioner's claim for contribution arose prior to the Section 77 proceedings. Under their view, petitioner would be relegated to the status of a prebankruptcy creditor, entitled to no priority over other such creditors.[1] Petitioner, on the other hand, maintains that its claim did not arise from the original accident, but from its payment to Sabol and therefore that its claim should be treated as an administrative expense or as one arising from the operation of the railroad. I agree with petitioner.

In 1951, Pennsylvania adopted the Uniform Contribution Among Tort-

---

1. The trustees have made no claim that debtor's attorney lacked authority to settle petitioner's claim for contribution. Compare *In re Gsand*, 153 F.2d 1001, 1005 (3d Cir. 1946).

feasors Act, 12 P.S. §§ 2082 et seq., section 2 of which provides in relevant part that

(1) The right of contribution exists among joint tortfeasors;

(2) A joint tortfeasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his prorata share thereof . . . . 12 P.S. § 2083.

Although, as the trustees point out, the rights and liabilities of the parties are fixed at the moment of the accident with the respect to a cause of action sounding in tort, *Adam v. Vacquier*, 48 F.Supp. 275 (W.D.Pa.1942), it is well-settled that in Pennsylvania recovery under the Uniform Contribution Act is a recovery in assumpsit or contract rather than in tort. *W. D. Rubright Co. v. International Harvester Co.*, 358 F.Supp. 1388, 1391 (W.D.Pa.1973); *Harger v. Caputo*, 420 Pa. 528, 533, 218 A.2d 108 (1966); *Swartz v. Sunderland*, 403 Pa. 222, 169 A.2d 289 (1961). "[T]he right to contribution accorded by the Pennsylvania statutes to one joint tortfeasor against the other creates a cause of action of a different nature from the tort action which was the subject of the original suit or claim," *W. D. Rubright Co. v. International Harvester Co.*, supra at 1391; see *Martin v. United States*, 162 F.Supp. 441 (E.D.Pa.1958). This right has, in fact, been characterized as dual: a right in equity and a right at law sounding in quasi contract. See *W. D. Rubright Co. v. International Harvester Co.*, supra at 1392. Moreover, although payment of more than one's pro rata share of the common liability plainly is a condition precedent to the accrual of the right to a money judgment for contribution, *Smith v. Whitmore*, 270 F.2d 741, 744 (3d Cir. 1959); *Falciani v. Philadelphia Transportation Co.*, 189 F.Supp. 203, 204 (E.D.Pa.1960), there is no question that the right may exist where the original defendant settles the case rather than risk the vicissitudes of a trial, see *Harger v. Caputo*, 420 Pa. 528, 532, 218 A.2d 108 (1966).

Here, although Sabol's injuries occurred prior to debtor's petition for reorganization, petitioner did not settle with Sabol, and consequently did not acquire the right to contribution from the Reading, until after the Section 77 proceedings had begun. Petitioner's claim is therefore more like an operating expense than the payment of a prebankruptcy debt. To permit the debtor under these circumstances to renege on an obligation which it voluntarily and quite properly assumed would, in my view, not only do violence to the notions of equity which are a mainstay of this court, but would seriously jeopardize the credibility of the trustees in negotiating potential future agreements of this kind.

"[C]ourts of bankruptcy are essentially courts of equity," *Local Loan Co. v. Hunt*, 292 U.S. 234, 240, 54 S.Ct. 695, 697, 78 L.Ed. 1230 (1934); *United States Nat. Bank in Johnstown v. Chase Nat. Bank of New York City*, 331 U.S. 28, 36, 67 S.Ct. 1041, 1045, 91 L.Ed. 1320 (1947), whose equitable powers should be exercised "to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done," *In Re Penn Central Transportation Company*, 346 F.Supp. 1330, 1332 (E.D.Pa.1972), quoting *Pepper v. Litton*, 308 U.S. 295, 305, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939).

Moreover, the principle of estoppel, upon which petitioner relies, is applicable in a Section 77 proceeding. Cf. *Chicago S.S. & S.B.R.R. v. Fleming*, 109 F.2d 419, 420 (7th Cir. 1940); *In re Autocue Sales & Distributing Corp.*, 167 F.Supp. 672, 674 (S.D.N.Y.1958). Estoppel is essentially a flexible doctrine, to be applied or denied as equities between parties may preponderate, *Goodwin v. Hartford Life Insurance Company*, 352 F.Supp. 907, 914 (W.D.Pa.1973), where one party has relied to his detriment on some action or inaction of the other party, *Insurance Co. of North America v. McCleave*, 462 F.2d 587, 588 (3d Cir. 1972); 1 Williston on Contracts

§ 139 (3d ed. 1957). Here the petitioner agreed to pay Sabol $30,000. in the good faith belief that it would in effect be promptly reimbursed for approximately one half that amount by the debtor. Debtor accordingly is now estopped from attempting to characterize the debt in a fashion that will certainly delay and possibly defeat petitioner's expectation of payment.

The petition will be granted.