SOUTH SIDE TRUST & SAVINGS BANK OF PEORIA, Plaintiff-Appellee, *v.* PEORIA HARBOR MARINA, INC., *et al.*, Defendants-Appellants.

Third District    No. 81-82

Opinion filed October 13, 1981.

Frederick G. Hoffman and Ronald L. Keyser, both of Elliff, Keyser, Oberle & Davies, P. C., of Pekin, for appellant William T. Griffin.

John W. Howard, of Bartley, Fraser, Parkhurst, Hession & Renner, of Peoria, for appellee.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

This action was brought by plaintiff upon a personal guaranty given to it by defendant William T. Griffin, following default in repayment of obligations owed plaintiff by Peoria Harbor Marina, Inc. The trial court granted plaintiff's motion to dismiss certain affirmative defenses of defendant and entered summary judgment for plaintiff against defendant, from which decisions this appeal is taken.

On January 3, 1980, plaintiff filed a seven-count complaint seeking damages for the default of Peoria Harbor Marina, Inc., under the terms of certain notes and an agreement entered into between Peoria Harbor Marina, Inc., Louis J. Paulsen and the plaintiff. Counts I through III of the complaint were directed to Peoria Harbor Marina, Inc. Counts IV and V were directed to the defendant Louis J. Paulsen upon his personal guaranty and as a signatory of the agreement, dated May 29, 1979. Counts VI and VII were directed to the defendant William T. Griffin upon his personal guaranty given to the plaintiff in consideration of advances to be made by the bank to Peoria Harbor Marina, Inc.

Count VI alleged that on June 17, 1974, in consideration of future advances to be made to Peoria Harbor Marina, Inc., by plaintiff, defendant executed and delivered to plaintiff his personal guaranty for the repayment of such advances. The extent of defendant's personal guaranty was limited to the sum of $180,000.

Count VI of the complaint further alleged that on February 15, 1979, Peoria Harbor Marina, Inc., executed and delivered a note to the plaintiff in the sum of $52,846.88, at 13.5-percent interest, due May 16, 1979. The note was a renewal of previous obligations owed plaintiff. Peoria Harbor Marina, Inc., defaulted in payment of the note but delivered to plaintiff three boats which were sold by plaintiff for $31,285.46.

A second note was executed by Peoria Harbor Marina, Inc., and delivered to plaintiff on March 27, 1979, for the sum of $7,778 at 13.5-percent interest, due June 25, 1979. This note was also a renewal of previous obligations owed plaintiff. The complaint alleged that Peoria Harbor Marina, Inc., defaulted in repayment of this note and that there was due as of January 1, 1980, the principal sum of $7,778, plus accrued interest of $796, plus attorneys' fees of $1,286.14.

Count VI of the complaint concluded by alleging that defendant, under the terms of his written guaranty, owed to plaintiff the sum of $46,906.06 as the result of the default of Peoria Harbor Marina, Inc., on the two notes.

In count VII of the complaint, plaintiff alleged the existence of a compromise agreement dated May 29, 1979, between plaintiff and Peoria

Harbor Marina, Inc., and Louis J. Paulsen. In the agreement, the parties acknowledged the indebtedness owed plaintiff on that date was $62,761.81. The agreement further provided that in exchange for the delivery to plaintiff by the Marina of three watercraft, the Marina would be given a credit of $47,000 against this outstanding indebtedness, leaving a balance of $15,761.81 owed to plaintiff. This sum was to be paid within six months of the agreement, drawing interest in the interval of eight percent. It was further agreed that in the event all of the terms and provisions of the agreement were complied with, Peoria Harbor Marina, Inc., would be released from its obligations to the plaintiff and the guaranty of Paulsen discharged. Count VII further alleged that Peoria Harbor Marina, Inc., and Paulsen defaulted under the terms of the agreement and there became due the plaintiff the sum of $15,761.81 plus accrued interest of $630.47. Count VII sought recovery against this defendant in the sum of $16,392.28 plus interest and attorneys' fees in the sum of $2,458.84 on the personal guaranty of defendant.

Defendant subsequently filed certain affirmative defenses to counts VI and VII which raised the written compromise agreement between plaintiff and Peoria Harbor Marina, Inc., and Louis J. Paulsen, dated May 29, 1980, in which Paulsen agreed to return three watercraft to plaintiff in exchange for a credit of $47,000 against the then outstanding indebtedness owed plaintiff of $62,761.81, leaving a balance of $15,761.81 to be paid within six months at eight percent interest. The agreement further provided that upon compliance with all its terms, Peoria Harbor Marina, Inc., and Paulsen would have no further obligation to plaintiff. Defendant was not a party to this agreement. Defendant stated that on or about September 13, 1977, he sent a letter to plaintiff terminating his personal guaranty. Plaintiff admits receipt of a letter on or about September 13, 1977, but denies the letter terminated the written guaranty. Defendant further stated that he was unaware of the compromise agreement of May 29, 1979, and was prejudiced by the failure of plaintiff to give notice that defendant's liability under his personal guaranty could have been limited at that point to $15,761.81, plus interest.

Defendant contended that during the year 1979, plaintiff sold a 28-foot boat for the benefit of Peoria Harbor Marina, Inc., and Louis J. Paulsen without requiring the proceeds to be paid to plaintiff to satisfy the compromise balance under the agreement of May 29, 1979. Defendant also contended that the enforcement by plaintiff of defendant's personal guaranty was unconscionable to the extent such enforcement deprived defendant of the opportunity to take advantage of the terms and provisions of the agreement of May 29, 1979.

Plaintiff filed a motion to dismiss defendant's affirmative defenses to

count VI of the complaint. Plaintiff also filed a motion for summary judgment as to counts I, II, IV and VI of its complaint.

The trial court granted summary judgment in favor of plaintiff and against Peoria Harbor Marina, Inc.

The trial court, following hearing, entered an order dismissing defendant's affirmative defenses to count VI of the complaint. The court further granted summary judgment in favor of plaintiff against defendant on count VI of the complaint for $38,283.68, plus attorneys' fees of $4,705, plus court costs of $95.60, for a total of $43,084.28. It is from this order that defendant prosecutes this appeal.

For purposes of appeal it should be pointed out that defendant has conceded that summary judgment was not improper by the trial court insofar as fact issues are concerned. He acknowledges that the facts as gleaned from the many affidavits contained in the record on appeal clearly establish an unpaid debt due to the plaintiff in the amount of $43,084.28. Defendant contends that the doctrine of equitable estoppel ought to prevent the plaintiff from enforcing, according to its precise terms, a contract against defendant which was a personal guaranty of a corporate debt. Although it is undisputed that the corporate defendant owed plaintiff $43,084.28, defendant argues that he should not, on equitable grounds, be required to pay the same amount under his personal guaranty. Defendant states that plaintiff is entitled to payment of only $15,761.81 plus interest because of an attempted agreement with the corporate defendant and the other personal guarantor to accept said sum if all the terms of the agreement were met. That agreement was not performed by the corporate defendant or other personal guarantor and by its express terms became null and void. Defendant seeks the benefit of an agreement to which he was not a party, and if he were to benefit in this way, his liability would be substantially less than the liability of the corporate defendant and the other guarantor.

■■ The question that defendant presents for review concerns the enforceability of a guaranty contract. This issue has been considered by the supreme court and appellate courts of this State, and in each instance the courts have held that a guarantor is bound by the clear and unambiguous terms of the guaranty contract. *Barrett v. Shanks* (1943), 382 Ill. 434, 47 N.E.2d 481; *Jacobson v. Devon Bank* (1976), 39 Ill. App. 3d 1053, 351 N.E.2d 254.

In the instant case the corporate defendant owed to plaintiff the sum of $62,761.81 on May 29, 1979. The debt was secured by a security interest in the corporate debtor's inventory consisting primarily of watercraft. Further security for payment was the contractual guaranty of two individuals, one of whom is the defendant against whom summary judgment

was rendered. Under Illinois law the plaintiff could have filed suit in May, 1979, for $62,761.81, the amount then due, rather than resort to the collateral. However, plaintiff attempted to recover collateral for the purpose of liquidating the corporate debt. This action was not required and directly benefitted the defendant. By recovering three boats, the plaintiff/bank was able to reduce the defendant's principal obligation by $31,285.40. The plaintiff requested full payment from defendant Griffin in August 1977. A month later defendant wrote the plaintiff and said that he terminated his guaranty. Two years later, in May 1977, plaintiff recovered collateral, conducted an auction, and credited defendant with $31,285.40. Plaintiff's efforts to minimize the debt, and patience, as demonstrated by forebearance in commencing suit against defendant for 2½ years, are evident.

After close scrutiny of several salient facts, it is apparent that defendant's claim for equitable relief cannot be sustained. Certain facts clearly demonstrate that the defendant's course of conduct was consistent with a goal of avoiding financial responsibility on his guaranty to the plaintiff. The guaranty was executed June 17, 1974. On August 12, 1977, the plaintiff wrote to defendant and asked him to make arrangements to liquidate the indebtedness of the corporate defendant, an indebtedness which then totaled $55,837.29. Shortly after receiving the demand for payment the defendant wrote the plaintiff on September 13, 1977, and revoked his guaranty. The revocation purported to be retroactive to May 6, 1977, the date defendant severed his ties with the corporate defendant. Judgment was rendered against the other individual guarantor, and the corporate defendant, by the trial court for obligations incurred prior to the revocation of defendant's guaranty.

■■ Defendant argues that the failure of plaintiff to join defendant as a party to the attempted May, 1979, settlement and the failure to advise defendant of the $15,761.81 payment due in December of 1979, are the only reasons why he did not pay that sum in December, 1979. Defendant's statement that he would have paid is without merit. Defendant would have known of the existence of the attempted settlement dated May 29, 1979, if he had been willing to accept communications from the plaintiff/bank. On June 11, 1979, defendant was sent a letter advising him of an auction of boats which had been surrendered to the plaintiff to liquidate a portion of the corporate debt. The letter also advised defendant of certain terms of the attempted settlement. The notice was sent postage prepaid, certified mail, return receipt requested. The defendant refused to accept delivery of the notice on three separate occasions, and the letter was returned to plaintiff. It is defendant's fault that he did not have actual notice of the agreement within several weeks after its execution. His claim that he did not have notice is clearly without merit when we consider that

it was defendant's affirmative acts by which receipt of notice was avoided.

After receiving a demand for payment from plaintiff in August of 1977, and after terminating his guaranty in September 1977, the defendant refused all contact with the plaintiff. He had no interest in voluntarily performing his obligations under the guaranty. That was shown by his refusal to accept the notice of June 11, 1979. Further evidence of this avoidance strategy is found in the pleadings in this cause. Plaintiff's complaint was filed January 3, 1980. As an exhibit to the complaint was attached the May 23, 1979, agreement which had not been performed by the corporate debtor or other individual debtor. Without contradiction it can be stated that defendant had actual notice of the agreement when he was served with the complaint. However, defendant did not at that time tender the $15,761.81 he argues he would have paid if only he had known of the agreement. He continued to resist any efforts to enforce the guaranty and filed a verified answer to the complaint on April 30, 1980, and raised his affirmative defenses. Defendant stated that he was not liable because he had terminated his guaranty in 1977. He further asserted that the plaintiff had been paid in full by the corporate debtor.

Defendant argues that he would have paid $15,761.81 in November of 1979 if that opportunity had been afforded him. Such a speculative assertion is not supported by the record. If the answer to the complaint had acknowledged liability under the guaranty, and if the defendant had deposited $15,761.81 with the court or tendered said sum to plaintiff at that time, further consideration of his argument might be warranted. Unfortunately, the record only reflects a vigorous defense by defendant. This court will not grant equitable relief on a record which clearly establishes defendant's efforts to avoid liability on his guaranty contract with plaintiff. His argument that he should only pay $15,761.81 is a continuation of his efforts to limit his liability and shift the loss to plaintiff.

For these reasons and those stated earlier in this opinion, the judgment which was entered against defendant, William T. Griffin, on January 19, 1981, for $43,048.28 is hereby affirmed.

Affirmed.

STOUDER and BARRY, JJ., concur.