535 NORTH MICHIGAN CONDOMINIUM ASSOCIATION, Plaintiff-Appellant, v. BJF DEVELOPMENT, INC., *et al.*, Defendants-Appellees.

First District (First Division)    No. 84—1655

Opinion filed May 12, 1986.

QUINLAN, J., specially concurring.

Sweeney & Riman, Ltd., of Chicago (James J. Graney, of counsel) for appellant.

Adams, Fox, Adelstein & Rosen, of Chicago (Philip Fertik, of counsel) for appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

This action arose out of an incident which occurred on the premises of plaintiff-appellant, 535 North Michigan Condominium Association, when a bar allegedly fell over on Shira Luft, a minor, causing her personal injuries. The parties subsequently settled for the sum of $55,000, and a release was executed on December 17, 1983. The release was approved by the Superior Court of St. Clair County, California, as being in the best interests of the minor claimant. Plaintiff-appellant then filed a two-count complaint against defendant-appellees, BJF Development, Inc., and Power Construction, Inc., based on con-

tribution and indemnity for the defendant-appellees' alleged breach of their duty to properly install the bar. Defendant-appellees filed motions to dismiss both counts, which the trial court granted on May 29, 1984. We reverse in part, affirm in part and remand for further proceedings.

The language of the subject release stated as follows:

"For and in consideration of the payment to us at this time of the sum of FIFTY-FIVE THOUSAND ($55,000) DOLLARS, the receipt of which is hereby acknowledged, we, HAROLD LUFT, Individually and as Guardian of SHIRA LUFT, a minor, and LORRAINE LUFT, being of lawful age and proper appointment, do hereby agree to covenant and release, acquit, discharge, remise, and forever discharge 535 NORTH MICHIGAN AVENUE CONDOMINIUM ASSOCIATION located at 535 N. Michigan Avenue, Chicago, Illinois, and ADE REALTY COMPANY located at 221 N. La Salle Street, Chicago, Illinois, and their agents, officers, directors, managers, servants and employees, successors and assigns of and from all claims, debts, dues, obligations, damages, costs, loss of services, loss of consortium, expenses or compensation on account of, or in any way growing out of, any and all known or unknown personal injuries and property damage resulting from or which may have resulted from an accident, occurrence or event which occurred on the premises of 535 N. Michigan Avenue, Chicago, Illinois on or about June 27, 1983. ***"

The document further stated:

"By this Release and indemnifying agreement, *the undersigneds acknowledge that the sums herein paid are deemed to be full and complete compensation for all damages suffered in the aforementioned accident, occurrence and event.*" (Emphasis added.)

In addition, the release contained an indemnification provision under which the Lufts must indemnify the named releasees to the extent of $55,000 from suits by any other alleged tortfeasors, either known or unknown.

The trial court dismissed plaintiff's contribution count, relying on *Alsup v. Firestone Tire & Rubber Co.* (1984), 101 Ill. 2d 196, 427 N.E.2d 1258, wherein our supreme court held that a broadly worded, general release executed under section 302(c) of the Contribution Among Joint Tortfeasors Act (Act) (Ill. Rev. Stat. 1983, ch. 70, par. 302(c)) will not discharge any parties other than those designated by name, or otherwise specifically identified. The trial court found that

because under *Alsup* defendants' liability to the injured parties was not discharged by the release in question, plaintiff was not entitled to contribution under the Act. The *Alsup* court made its holding *prospective* to releases executed after January 20, 1984 (101 Ill. 2d 196, 203, 427 N.E.2d 1258), however, and is therefore inapplicable by its terms to the release executed by plaintiffs in the instant action. Having so determined, we must now consider whether the language contained in the subject release was broad enough to extinguish all of the liability of the defendants herein to the injured parties. We believe that it was, and accordingly, we reverse that portion of the trial court's order dismissing plaintiff's count for contribution.

The court in *Alsup* placed great emphasis on the policy behind the Act, which is to protect the rights of injured claimants and to encourage settlements by abrogating the old common law rule that the release of one joint tortfeasor is a release of all joint tortfeasors, and by permitting partial settlements. (*Alsup v. Firestone Tire & Rubber Co.* (1984), 101 Ill. 2d 196, 427 N.E.2d 1258; Ill. Rev. Stat. 1983, ch. 70, par. 302(c).) The Act permits a claimant to settle with a tortfeasor to the extent of the latter's *pro rata* share of liability without relinquishing the claimant's rights to proceed against any remaining tortfeasors to obtain full compensation for his damages. In addition, section 302(b) of the Act proportions liability and protects the interests of a tortfeasor who has paid more than his *pro rata* share of liability by endowing him with a right to contribution against any remaining tortfeasors, but only in those situations where the remaining tortfeasors are no longer subject to a direct action by the original claimant. Ill. Rev. Stat. 1983, ch. 70, pars. 302(b), (e); see *Ragusa v. City of Streator* (N.D. Ill. 1982), 95 F.R.D. 527 (stating that, under Illinois law, the right of contribution ripens into a cause of action when a tortfeasor pays more than his proportionate share of the underlying claim).

In order to determine the extent and scope of the release now before us, it is necessary to consider the language of the instrument itself, as well as the circumstances surrounding the transaction. (See *Schrempf v. New England Mutual Life Insurance Co.* (1982), 103 Ill. App. 3d 408, *appeal denied* (1982), 91 Ill. 2d 565, and *Glandinus v. Laughlin* (1977), 51 Ill. App. 3d 694, 366 N.E.2d 430.) In considering the effect of a pre-Contribution Act release containing language similar to the one now before us, our supreme court held that a full or unqualified release as to one indivisible injury given to any of those concurring in its cause served to release both joint and independent concurrent tortfeasors. (*Porter v. Ford Motor Co.* (1983), 96 Ill. 2d

190, 449 N.E.2d 827.) The court in *Porter* found that at least as of time the subject release had been executed, the original claimant had been willing to accept a certain specified sum from one tortfeasor in full settlement without any expectation of recovering an additional amount from a concurrent tortfeasor or any other. The court reasoned that the release, taken in full satisfaction, served as a bar to any further legal action " 'because all of the plaintiff's injury is compensated for in the eyes of the law and, because of this, those tortfeasors paying for the satisfaction can be said to have paid as well for any damages, if any, caused by nonpaying negligent parties.' " (*Porter v. Ford Motor Co.* (1983), 96 Ill. 2d 190, 196, 449 N.E.2d 827, quoting *Alberstett v. Country Mutual Insurance Co.* (1979), 79 Ill. App. 3d 407, 410, 398 N.E.2d 611, (holding that where certain tortfeasors have effected a good-faith settlement with the plaintiff by means of a release intended to cover all injuries, those settling tortfeasors could maintain a third-party action to recover from subsequent allegedly malpracticing doctors).) See also *Liberty v. J.A. Tobin Construction Co.* (Mo. App. 1974), 512 S.W.2d 886.

■ In determining the parties intent, we cannot ignore the plain language of the release itself, in which the Lufts admitted that the specified sum was deemed "full and complete compensation for all damages suffered in the aforementioned accident, occurrence and event." In addition to this, the California court reviewed the amount tendered in relation to the damages claimed, and determined the proposed settlement to be in the best interests of the minor, Shira Luft. While the release here does not contain an all-inclusive designation as to the parties covered, neither does it contain any reservation of rights or specific words which would indicate a limited character to be attributed to it. Rather, it purports to cover, in most general terms, any and all injuries arising from the specific accident involved. (See *Liberty v. J.A. Tobin Construction Co.* (Mo. App. 1974), 512 S.W.2d 886, 891 (focusing the court's inquiry on *what*, not *who*, had been released by the subject document).) We therefore find that the subject release was intended to, and did dispose of the whole subject matter or cause of action involved, and effectively extinguish all liability of defendants here to the original claimants. Plaintiffs may therefore maintain a cause of action for contribution from defendants under the Act. We believe this holding to be consistent with the two major purposes of the Contribution Act, which are the equitable sharing of damages and the encouragement of settlement. See *Heinrich v. Peabody International Corp.* (1985), 139 Ill. App. 3d 289, 296, 486 N.E.2d 1379, and cases cited therein.

We find little merit in defendants' argument that the indemnification provision contained in the release demonstrates a contrary intent on the part of the original claimants. Rather, we believe this to indicate only a means for the settling parties, 535 North Michigan Condominium Association and ADE Realty Company, to protect themselves against any eventual breach of the release agreement by the original claimants.

■ Plaintiff next contends that its complaint stated a cause of action under a traditional implied indemnity theory and that the trial court erred in holding that plaintiff was actively negligent as a matter of law and in dismissing plaintiff's indemnity count on the pleadings. On remand from the Illinois Supreme Court, this court recently addressed the question of whether implied indemnity exists in Illinois in view of the Contribution Act. In a lengthy and well-reasoned opinion, the court in *Heinrich* considered the historical relationship between indemnity and contribution, the policies supporting the adoption of contribution by our supreme court, the legislature's intent in passing the Contribution Act, the broad statutory scheme and the specific language of the Act setting forth the general application of contribution, and found each of these to weigh in favor of a finding that implied indemnity has been abolished. (*Heinrich v. Peabody International Corp.* (1985), 139 Ill. App. 3d 289, 302, 486 N.E.2d 1379; see also *Holmes v. Sahara Coal Co.* (1985), 131 Ill. App. 3d 666, 475 N.E.2d 1383 and *Morizzo v. Laverdure* (1984), 127 Ill. App. 3d 767, 775, 469 N.E.2d 653 (Downing, J., specially concurring).) Accordingly, we affirm that portion of the trial court's order which dismissed plaintiff's count for implied indemnity and remand this cause for further proceedings consistent with the views expressed herein.

Reversed in part, affirmed in part and remanded.

BUCKLEY, P.J., concurs.

JUSTICE QUINLAN, specially concurring:
I agree with the disposition of this case made by the majority opinion involving both the reversal of the trial court's dismissal of the plaintiff's contribution count and the affirmation of the trial court's order dismissing the plaintiff's count for implied indemnity under this court's previous determination in *Heinrich v. Peabody International Corp.* (1985), 139 Ill. App. 3d 289, 486 N.E.2d 1379. However, the majority's ruling that the release here was broad enough to extinguish the liability of all the defendants to the injured parties, and

thus, did permit a contribution action raises a number of questions that are left unanswered by the majority opinion.

Among the questions that arise is whether there can be a recovery under the Contribution Act where there has been neither a judgment of anyone's liability nor a judicial finding of the amount of any proximately caused damages. Another question is, What issues are available to a defendant in a subsequently brought lawsuit such as this, and what must a plaintiff prove to recover and how much may he recover?

These are threshold questions to an action for contribution which I think should be addressed at least preliminarily, since these will be the first issues to be confronted on a trial of the plaintiff's contribution count.

The first question (which was not addressed but is subsumed in the majority decision) is, of course, Where one of two or more joint tortfeasors settles with an injured third party and obtains a release of all claims without suit or judgment having been entered, may contribution be enforced against the other wrongdoer or doers? I believe that a tortfeasor effecting a settlement without a suit or judgment can recover against his fellow joint tortfeasor under certain circumstances. Such a recovery, I submit, is consistent with the policy behind a contribution act, and is consistent with the clear language of our Act and with the decisions in other jurisdictions that have considered this question.

As the commissioners' comment to section 1(d) of the Uniform Contribution Among Tortfeasors Act indicates, "[t]he policy of the Act is to encourage rather than discourage settlements. The tortfeasor who settles removes himself entirely from the case so far as contribution is concerned if he is able and chooses to buy his peace for less than the entire liability. If he discharges the entire obligation it is only fair to give him contribution from those whose liability he has discharged." (12 U.L.A. 62, Commissioners' Comment at 65 (1975); see also *Swartz v. Sunderland* (1961), 403 Pa. 222, 225, 169 A.2d 289, 291.) The primary purpose of the Contribution Act is to create a right to contribution among joint tortfeasors and to establish a procedure to apply this right effectively in practice. The Act is intended to provide a vehicle to achieve a joint resolution of all the issues concerning the parties involved without any undue delay and thereby stimulate and permit settlements of valid claims without expensive and time-consuming litigation. (403 Pa. 222, 225, 169 A.2d 289, 291.) The evil our Contribution Act as well as others sought to remedy was the unfairness of allowing a disproportionate share of the recovery to

be borne by one of several joint tortfeasors, and, thus, the goal of the Contribution Act was to accomplish a more equitable distribution of the burden among those liable in tort for the same injury. See *Robertson v. McCarte* (1982), 13 Mass. App. Ct. 441, 443, 433 N.E.2d 1262, 1264.

The language of the Illinois act itself also authorizes contribution among joint tortfeasors where a settlement of a claim has been effectuated even though there has been no adjudication of the claim nor even an action filed.

The pertinent provisions of the Act are contained in section 2 and section 5. Section 2 specifically provides: "Except as otherwise provided in this Act, where two or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them." However, it goes on and limits this right stating that, "[t]he right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share." And further that "[a] tortfeasor who settles with a claimant *** is not entitled to recover contribution from another tortfeasor whose liability is not extinguished by the settlement." (Ill. Rev. Stat. 1983, ch. 70, par. 302.) Finally, section 5 provides for the enforcement of this right: "A cause of action for contribution among joint tortfeasors may be asserted by a separate action before or after payment, by counterclaim or by third-party complaint in a pending action." Ill. Rev. Stat. 1983, ch. 70, par. 305.

Thus, it appears clear from a fair reading of these sections that the entry of judgment is not the exclusive basis of the right to seek contribution. Section 2 expressly states that a right of contribution exists "even though judgment has not been entered against any or all of them." This language surely indicates a legislative intent that the entry of a judgment is not essential to maintain an action for contribution. Furthermore, the other sections do not limit the right of contribution to a judgment or permit enforcement only after entry of a judgment.

This interpretation of the right of contribution is also consistent with the interpretation of other State courts which have considered this question. (See, *e.g.*, *W. D. Rubright Co. v. International Harvester Co.* (W.D. Pa. 1973), 358 F. Supp. 1388; *Swartz v. Sunderland* (1961), 403 Pa. 222, 169 A.2d 289; see also *American Motorcycle Association v. Superior Court* (1978), 20 Cal. 3d 578, 578 P.2d 899, 146

Cal. Rptr. 182.) Any other result would do substantial prejudice to those who wish to resolve litigation matters of this nature as quickly and as fairly as possible, and would, I suggest, be directly contrary to the very policy of the Contribution Act to encourage amicable resolutions of claims.

Additionally, a further reading of the Act itself establishes basically only two conditions that must exist before the right of contribution arises in the case of a settlement, *i.e.*, (1) that the liability of the other joint tortfeasors has been extinguished by the settlement (see Ill. Rev. Stat. 1983, ch. 70, par. 302(e)), and (2) that the tortfeasor seeking contribution has paid more than his pro rata share of common liability (see Ill. Rev. Stat. 1983, ch. 70, par. 302(b).) Nor, as other State courts have observed, will the mere fact that judgment has not been entered in favor of the injured party be prejudicial to the joint tortfeasors who are called upon to meet their equitable responsibilities of contribution. They will still be entitled to their day in court where there will be an opportunity to defend against the issue of liability and the reasonableness of the amount paid in settling the asserted claim. See *Swartz v. Sunderland* (1961), 403 Pa. 222, 226, 169 A.2d 289, 291; *W. D. Rubright Co. v. International Harvester Co.* (W.D. Pa. 1973), 358 F. Supp. 1388, 1392.

Accordingly, to recover the plaintiff here will be required to establish several things. He must establish that he entered into a good faith settlement of the claim, he has paid the settlement, and that he has exceeded his *pro rata* share of the common liability. (Ill. Rev. Stat. 1983, ch. 70, pars. 302(a), (b).) In other words, the plaintiff must demonstrate the reasonableness of the amount of his settlement (see *W. D. Rubright Co. v. International Harvester Co.* (W.D. Pa. 1973), 358 F. Supp. 1388, 1392; *Robertson v. McCarte* (1982), 13 Mass. App. Ct. 441, 443, 433 N.E.2d 1262, 1264; *Swartz v. Sunderland* (1961), 403 Pa. 222, 226, 169 A.2d 289, 291), that it was made in reasonable anticipation of liability, and thus, by paying this amount, he paid more than his share of the liability. (See proposed Illinois Pattern Jury Instruction, Civil, No. 600.09—16 (2d ed. Supp. 1985); *St. Paul Fire & Marine Insurance Co. v. Michelin Tire Corp.* (1973), 12 Ill. App. 3d 165, 298 N.E.2d 289.) This determination, I believe, is at least initially and ordinarily a matter for the court to decide based on the facts and circumstances surrounding the settlement. (See *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 463 N.E.2d 792.) Once these factors have been established, the settlement will then set the amount of liability to be apportioned among the joint tortfeasors. See *W.D. Rubright Co. v. International Harvester Co.* (W.D. Pa. 1973),

358 F. Supp. 1388, 1392-96.

Next, the plaintiff must demonstrate that the defendants are subject to liability in tort arising out of the same injury to the person or his property as was the plaintiff here, and the relative degree of culpability of each, *i.e.*, the percent their conduct proximately caused the claimant's injuries or damages. (See IPI Civil 2d No. 600.09 *et seq.* (1985 Supp.).) At that point, I believe, if the defendant does not have an affirmative defense, a plaintiff is entitled to a judgment against each defendant apportioning the settlement according to each tortfeasor's percentage of responsibility.

While I acknowledge that these questions or issues are not explicitly raised by the case as decided by the majority, I nevertheless feel that a full and proper resolution of the case presented does necessitate the answers to the above questions. Also, while the resolution of the questions I have proposed is solely my view of their resolution and application, I also believe it is consistent with the continuing policy of the Contribution Act in Illinois and is consistent with the authorities that have considered similar questions in other jurisdictions.