SECOND
DIVISION February
25, 1997

No. 1-94-3760

GRETCHEN REGNERY, et al.,

 Plaintiffs-Appellants/Cross Appellees,

 v.

DAVID R. MEYERS and FREDERICK C.
MEYERS,

 Defendants-Appellees/Cross
 Appellants,

 

DAVID R. MEYERS and FREDERICK C.
MEYERS,

 Counter-Plaintiffs/Cross Appellants,
 v.

GRETCHEN REGNERY, et al.,

 Counter-Defendants/Cross Appellees.)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Appeal from the
Circuit Court of
Cook County.

Honorable
Edward C. Hofert,
Judge Presiding.

 PRESIDING JUSTICE TULLY delivered the opinion of the court:
 Plaintiffs, Gretchen Regnery (hereinafter Gretchen), Verla Regnery (hereinafter
Verla), Lynn Regnery (hereinafter Lynn), Elisabeth B. Regnery (hereinafter
Elisabeth), William H. Regnery II (hereinafter William), Peter B. Regnery
(hereinafter Peter), Anne Regnery (hereinafter Anne), David B. Regnery, Patrick
Regnery (hereinafter Patrick) and Bank of America N.T. and S.A. (fomerly Security
Pacific Bank) (hereinafter Bank of America), brought this action in the circuit court
of Cook County against defendants, David R. Meyers and Frederick C. Meyers
(hereinafter David and Frederick M., or collectively the Meyers), seeking damages for
breach of fiduciary duty. The trial court found that David breached his fiduciary
duties which he owed to plaintiffs and that Frederick M. induced, participated in and
accepted benefits from such breaches. It is from this judgment that plaintiffs now
appeal and defendants cross-appeal to this court pursuant to Supreme Court Rule
304(a) (155 Ill. 2d R. 304(a)). 
 For the reasons which follow, we affirm in part and reverse in part and remand
with directions.
 FACTUAL BACKGROUND
 Joanna Western Mills Company (hereinafter Joanna) was a family-owned
business, incorporated under the laws of Delaware, with its principal place of
business in Chicago, Illinois. In 1980 and 1981, Joanna experienced financial
difficulties and had a net operating loss of between 2 and 4 million dollars over the
course of the 2 years. On August 12 and 13, 1981, shareholder meetings were held
to discuss the future of the company. William, then president of Joanna, expressed
concern over the 1,904.5 shares of Joanna stock that he had purchased from the
Hoover Institute, one of Joanna's investors, in May of 1981, at $500 per share. As
a result of the meetings, William resigned as president of Joanna upon the condition
that the shares that he purchased from Hoover be repurchased by other Joanna
shareholders for $500 per share. Also as a result of the meetings, a voting trust was
established, and Verla, one of the majority shareholders, deposited 3,745 shares of
Joanna stock into the voting trust. Those 3,745 shares constituted slightly more than
half of the 7,483.5 then issued and outstanding shares of Joanna. Frederick Regnery
(hereinafter Frederick R.), Henry Regnery (hereinafter Henry) and David were named
trustees of the voting trust.
 In 1982 and 1983, Joanna's financial condition began improving. In 1983,
Frederick began discussing with Henry the possibility of Frederick M. and David, as
executives, each purchasing 500 shares of Joanna at $500 per share. Henry refused
to support such a sale but did agree to support a sale of 300 shares to each at $500
per share. On September 13, 1983, at a board of directors meeting, Henry proposed
the sale to Meyers. The board passed a resolution to call a special stockholders
meeting for purposes of allowing the sale to the Meyers. Notice of the special
stockholders meeting was mailed to each stockholder of record. The notice informed
the stockholders that the meeting was being held for the purpose of approving the
sale of 600 shares of compnay stock to 2 executives of Joanna. 
 The special stockholders meeting was held on September 26, 1983. David,
acting as trustee of the voting trust, voted the trust's 3,745 shares of stock, which
constituted 71% of the company's total shares, in favor of the sale to the Meyers. The
sale of stock to the Meyers was approved by the stockholders at the meeting by 98.8%
of the total shares. 
 In 1986, Frederick R. and Kenner & Company (hereinafter Kenner) each made
separate proposals for the purchase of Joanna. At a special meeting of the board of
directors, the board voted to approve the Kenner offer and recommended that Alfred
be appointed as the stockholders' agent in connection with the Kenner transaction. 
At the time, Frederick R. was still concerned about the prior sale of stock to the
Meyers and threatened to assert a claim on behalf of himself and the company
relating to that sale. Thus, the board authorized the payment of $150,000 to
Frederick R. for, among other things, his covenant not to sue Joanna, its stockholders
or directors in connection with the 1983 sale of stock to the Meyers. 
 The stockholders were notified of the settlement of Frederick R.'s claims. They
were also asked to sign a consent which authorized the execution of the merger
agreement, escrow agreement and agency agreement which appointed Alfred Regnery
(hereinafter Alfred) as the shareholders' agent. The consent was signed by a majority
of Joanna shareholders. As a result of the sale to Kenner, the Joanna shareholders
received $7,766.50 per share owned, $7,097 of which was paid in cash and $669.50
of which was put into escrow to cover corporate liabilities. The shareholders also
received stock rights for 10% of the common and preferred stock in the new
corporation. 
 In July, 1987, Gretchen, Anne, Verla, Lynn and Peter filed the present action
against defendants. Defendants contacted Alfred and requested that he release
plaintiffs' claims against them pursuant to the agency and consent agreements. 
Thereafter, in a separate action, Alfred filed a complaint for declaratory judgment in
the circuit court of Cook County, naming as defendants all parties in the present case
and all former Joanna shareholders, requesting that the court enter a judgment
authorizing him to execute a release of plaintiffs' claims brought in the present
action. The two cases were consolidated and both Alfred and plaintiffs herein filed
cross-motions for summary judgment on Alfred's claims. The trial judge granted
Alfred's motion, thus allowing his execution of the release. On appeal, this court
reversed the trial court's order and remanded the case for further proceedings. On
remand, several other Joanna shareholders requested and were granted leave to
intervene. However, the remaining Joanna shareholders who were named in the
consolidated suit filed by Alfred have not intervened in the present suit and have not
asserted their own separate claims against defendants. 
 Following a bench trial, the trial court found that defendant David breached
his fiduciary duties owed to the minority stockholders of Joanna and that defendant
Frederick M. induced those breaches, participated in them, knowingly accepted
benefits from them and engaged in an intentional plan to act in concert with David. 
Moreover, the trial judge found that the Meyers received $4,359,900 in profit from
David's breaches of fiduciary duties as well as $195,000 in dividends on the stock
they wrongfully acquired. The trial court awarded plaintiffs, who were 35.71%
stockholders in Joanna at the time of the breach, 35.71% of the amounts obtained by
the Meyers and denied plaintiffs' claim for interest. Plaintiffs filed a motion to
modify the trial court's judgment. The trial court treated plaintiffs' motion as a post-
trial motion to reconsider and denied the motion. 
 ISSUES PRESENTED FOR REVIEW
 On appeal, plaintiffs argue that the trial court erred when it: (1) allowed
defendants to retain the majority of the profits they obtained through their breach
of fiduciary duties; and (2) denied plaintiffs' claim for prejudgment interest on such
profits. On cross-appeal, defendants raise the following issues: (1) whether the trial
court erred in finding that the 1986 consent to the Kenner transaction does not
constitute a release of plaintiffs' claims against them; (2) whether this court's decision
in Regnery v. Regnery, 211 Ill. App. 3d 607 (1991), was erroneous in light of
additional evidence presented at trial; (3) whether the trial court improperly
disregarded Delaware law; (4) whether the trial court erred in finding that
defendants breached their fiduciary duties to the voting trust and to the minority
stockholders; and (5) whether the trial court erred in finding that Frederick M.
induced David to breach fiduciary duties. As the issues raised in the direct appeal
are dependent upon the outcome of those raised in cross-appeal, we will address the
arguments raised on cross-appeal first. 
 OPINION
 We first turn to defendants' contention that the trial court erred in finding that
the 1986 consent agreement to the Kenner transaction does not constitute a release
of plaintiffs' claims against them. In order to determine the extent and scope of a
release, it is necessary to consider the language of the instrument as well as the
circumstances surrounding the transaction. 535 North Michigan Condo. Ass'n v. BJF
Development, Inc., 143 Ill. App. 3d 749, 751 (1986). The interpretation of a party's
agreement or contract on appeal is a question of law to be determined by the
appellate court de novo. Best Coin-Op, Inc. v. Old Willow Falls Condominium Ass'n,
120 Ill. App. 3d 830, 833 (1983). In the present case, the language of the 1986
consent agreement reads in pertinent part: 
 "WHEREAS, it is in the best interests of the stockholders
 of this corporation to fully and finally resolve all claims
 and matters related to the Acquisition Agreement, Escrow
 Agreement, Agreement of Merger and the issuance of the
 Company's stock."
 Defendants claim that, since the consent agreement stated that plaintiffs agree
to resolve all claims related to the issuance of the company's stock and since no
limitations were included, plaintiffs thereby released all claims that they had against
defendants relating to defendants' purchase of company stock. We disagree.
 Although the consent agreement contains the above-referenced language, it
does not clearly and unequivocally state that plaintiffs released such claims against
defendants. Moreover, the words "I release" or "we release" are not found within the
agreement. Rather, as the trial court noted, the only reference made toward
releasing any claims is made in the recitals, or the "whereas" clauses, preceding the
agreement. As this court stated in Illinois Housing Development Authority v. M-Z
Construction Corp., 110 Ill. App. 3d 129 (1982), a recital is merely an explanation of
the circumstances surrounding the execution of the contract but is not a binding
obligation unless referred to in the operative portion of the contract. Illinois Housing
Development, 110 Ill. App. 3d at 144. 
 Thus, in the present case, we find that the language in the recitals of the
consent agreement was included for purposes of consummating the sale to Kenner. 
The purpose of such language was simply to restrict plaintiffs and others similarly
situated from asserting claims which arise in connection with the acquisition, merger,
escrow or agency agreements with Kenner or the Kenner transaction itself. See
Regnery v. Regnery, 211 Ill. App. 3d 607, 615 (1991). Plaintiffs' claims bear no
relation to the Kenner transaction and do not arise under any of the agreements
associated with that transaction. Moreover, even if plaintiffs' claims had arisen
under the Kenner transaction, it is questionable as to whether such language buried
in a "whereas" clause would have been sufficient to even constitute a release of
plaintiffs' claims. If defendants desired that plaintiffs release all claims against
them, they could have simply requested that plaintiffs execute a covenant not to sue
as they did with Frederick R. Accordingly, we find that the trial court correctly found
that the consent agreement did not constitute a release of plaintiffs' claims against
defendants.
 We now turn to defendants' contention that this court's decision in Regnery
was erroneous in light of additional evidence presented at trial. Specifically,
defendants request that this court depart from its previous decision and rule that
Alfred was properly authorized to release plaintiffs' claims against defendants. Upon
a careful review of the Regnery opinion and the record on appeal in the instant case,
we do not find that our decision in that case was palpably erroneous. See Martin v.
Federal Life Insurance Co., 164 Ill. App. 3d 820, 824 (1987); Stallman v. Youngquist,
152 Ill. App. 3d 683, 689 (1987). Assuming, arguendo, that plaintiffs' claims are
identical to those asserted by Frederick R., we still find, as we did in Regnery, that
the agency agreement empowers Alfred to dispose or settle only those claims relating
to the Kenner transaction or the documents executed in connection therewith. 
Plaintiffs' claims asserted in the instant case, although they arise out of the sale of
company stock to the Meyers, are in no way related to the Kenner transaction. 
Accordingly, we do not find that Alfred was authorized to release plaintiffs' claims
against defendants. Thus, we need not disturb our decision in Regnery.
 We will now address defendants' contention that the trial court erred by
disregarding Delaware law. Section 152 of the Delaware Corporations Code
(hereinafter the Delaware Code) provides in pertinent part: "In the absence of actual
fraud in the transaction, the judgment of the directors as to the value of such
consideration [for which shares of stock with par value may be issued] shall be
conclusive." Del. Code Ann. tit. 8,  152 (1991). Defendants argue that, under
Delaware law, the decision of the board of directors to set the price of the stock sold
to defendants at $500 per share is conclusive and should not have been disturbed by
the trial court unless plaintiffs had shown actual fraud. We disagree. 
 Although defendants are correct in their initial premise that, under section 152
of the Delaware Code, a board of directors' determination as to the value of the
company's stock is conclusive absent a showing of fraud, this section is inapplicable
to the facts of the present case. Although the Joanna board of directors considered
the sale of 600 shares of company stock to defendants for $500 per share, the board
itself did not set the price. Rather, the board left it up to the shareholders to decide
whether such a sale at that price was proper. Even the language in the board's
resolutions indicates that the decision was that of the shareholders: "*** the Board
of Directors hereby calls and requests *** a special meeting of stockholders *** for
the purpose of considering the sale of 300 shares of common stock of the Company,
$100 par value per share, to each of David R. Meyers and Frederick C. Meyers at a
price of $500 per share ***." Following such resolution of the board, a special
meeting of the stockholders was held at which the sale to Meyers was voted on and
approved. Thus, we find that the trial court's determination that the board of
directors did not vote to issue the 600 shares of stock to defendants was not against
the manifest weight of the evidence. Since we find that it was not the board who
determined the price of the shares or approved the sale to defendants, it was
unnecessary for the trial court to require plaintiffs to make an actual showing of
fraud. Moreover, given this finding, the trial court properly questioned the adequacy
of price. Accordingly, we find no error in the trial court's determinations. 
 We now address defendants' fourth argument that the trial court erred in
finding that defendant David breached his fiduciary duties to the voting trust. 
Defendants argue that the trust instrument itself created a conflict of interest for the
trustees of the voting trust. Therefore, defendants argue that under In re Estate of
Halas, 209 Ill. App. 3d 333 (1991), where a conflict of interest is created by the trust
instrument itself, the fiduciary will not be held liable for his conduct unless the
fiduciary has acted dishonestly or in bad faith, or has abused his discretion. Halas,
209 Ill. App. 3d at 345. Defendants claim that plaintiffs have not met their burden
of proof, and, thus, the trial court erred in finding a breach of duty. We disagree. 
 As plaintiffs point out, the trust agreement specifically provides that the
trustees shall exercise their best judgment so that the interests of the trust certificate
holders (i.e., Verla) shall be safeguarded. Moreover, it is well settled that a trustee
owes the highest duty to his beneficiary to fully and completely disclose all material
facts relating to dealings with the trust. Obermaier v. Obermaier, 128 Ill. App. 3d
601, 607 (1984). Because we agree with the trial court's ruling that the shareholders,
rather than the board members actually determined the price of the shares sold to
defendants, we find that David abused his discretion by voting in favor of the sale to
himself and his brother at a price substantially below the fair market value of the
shares. We further agree that David acted in bad faith by disregarding the interests
of Verla and causing the value of her stock to be diluted. Instead of taking into
account Verla's interest as a majority stockholder, David acted in his own best
interest and in that of his brother's. Moreover, upon a careful review of the terms
of the voting trust, we agree with the trial court's interpretation that a decision of the
trustees regarding a sale of shares must be unanimous. Therefore, we find that
David abused his discretion in causing the voting trust to vote in favor of the sale
without a unanimous decision of the trustees. Finally, we also agree with the trial
court that in failing to notify Verla of his intentions to vote her stock in favor of a
sale in which he was an interested party, David also abused his discretion. 
Accordingly, the findings of the trial court are not against the manifest weight of the
evidence.
 Next, defendants argue that the trial court erred in finding that David as
trustee and majority stockholder breached his fiduciary duties owed to the minority
stockholders. Delaware courts have consistently held that majority stockholders owe
a fiduciary obligation to minority stockholders. See Panter v. Marshall Field & Co.,
486 F. Supp. 1168 (D.C. Ill. 1980); Singer v. Magnavox Co., 380 A.2d 969 (Del. Super.
1977). Because the voting trust was the majority stockholder of the corporation,
David, as trustee, owed a fiduciary duty to the minority stockholders. Thus, plaintiffs
contend that David breached his fiduciary duties to the minority shareholders by
causing the voting trust to vote in favor of a sale of stock to his brother and himself
at a price far below fair market value. We agree with plaintiffs' contention.
 Because David stood on both sides of the transaction (i.e., as majority
shareholder voting to sell the shares and as employee wishing to purchase such
shares), he and Frederick M. have the burden of proving the fairness of such a
transaction. See Weinberger v. UOP, Inc., 457 A.2d 701, 710 (Del. Super. 1983);
Singer, 380 A.2d at 976. Defendants rely on Sandler v. Schenley Industries, Inc., 79
A.2d 606 (Del. Ch. 1951), for the proposition that where there is a disparity between
the fair market value of stock and the price at which it is sold, the transaction may
still be valid as a form of compensation. Sandler, 79 A.2d at 610. However, we find
Sandler factually distinguishable from the case at hand, for the executive purchasing
the stock was not the controlling shareholder who voted in favor of the sale. 
Moreover, the trial court in the present case specifically found that, not only were the
shares worth substantially more than $500 per share at the time of the sale, but also
that defendants knew that they worth substantially more. Accordingly, we find that
the trial court properly held that David breached his fiduciary duty to minority
shareholders.
 We now turn to defendants' final argument that the trial court erred in finding
that Frederick M. induced David to breach fiduciary duties. Specifically, defendants
argue that there is insufficient evidence to support a finding that Frederick M.
induced or participated in any breach of fiduciary duty. Plaintiffs contend, however,
that Frederick M. was instrumental in the scheme that caused David to breach his
fiduciary duties to the voting trust and the minority shareholders. We agree with
plaintiffs and find ample evidence of Frederick M.'s participation in the events
leading to a breach of fiduciary duty by David.
 A third party who colludes with a fiduciary in committing a breach of duty,
induces or participates in such breach, and obtains the benefits therefrom is directly
liable to the aggrieved party. Village of Wheeling v. Stavros, 89 Ill. App. 3d 450, 455
(1980). In the p